## COMMONWEALTH *vs.* JOSEPH BAKEMAN.
## SAME *vs.* SAME.

An indictment on the Gen. Sts. *c.* 63, § 108, charging that the defendant, on one day, intending to obstruct an engine passing upon a railroad, did on another day put a rail across the track, is bad for want of averment that the act charged was done with criminal intent, or the intent charged was accompanied by any act.

A previous acquittal upon an indictment on the Gen. Sts. *c.* 63, § 107, for obstructing an engine passing upon a railroad, by putting a rail across the track, will not bar the prosecution of another indictment, against the same defendant, on § 108, for putting the rail across the track with intent to obstruct the passage of the engine.

Proof of a statute chartering a corporation under a particular name, and of the subsequent public exercise of the franchise, for many years, by an association under that name, will warrant a finding of the actual existence of the corporation, and of its management and ownership of property which it employs in exercising the franchise.

On the trial of an indictment on the Gen. Sts. *c.* 63, § 108, for doing an act with intent to obstruct engines and carriages passing upon a railroad and endanger the safety of persons conveyed in them, the defendant has no ground of exception to a ruling that if he did the act, and the ordinary and usual consequences of so doing would be to cause such obstruction and danger, it is competent for the jury to infer that he did it with that intent, even if he designed to injure no particular person.

An indictment on the Gen. Sts. *c.* 63, § 108, for doing an act with intent to obstruct an engine passing upon a railroad, may be sustained by evidence which also shows that the engine was thereby obstructed.

THE FIRST CASE was an indictment found, returned and tried at June term 1870 of the superior court, with two counts, the first on the Gen. Sts. *c.* 63, § 108, and the second on § 107.*

---

* " SECTION 107. Whoever, by himself or others, obstructs any engine or carriage passing upon a railroad, or endangers the safety of persons conveyed

The first count averred that the defendant, " on the fifth day of March now last past, at Northampton in the said county of Hampshire, wilfully, maliciously and unlawfully contriving and intending the engines and carriages of the Connecticut River Railroad Company, a corporation established by law, then and there lawfully passing over and along the railroad of said corporation there located and situate, to obstruct, with intent then and there the safety of divers persons then and there lawfully riding, passing and being conveyed over and along said railroad at Northampton aforesaid, in and upon the engines and carriages aforesaid, to endanger, did at Northampton aforesaid, on the said first day of March now last past, wilfully, maliciously and unlawfully place and put upon and across said railroad, there situate, one iron rail, whereby the said engines and carriages were then and there in great danger of being obstructed, and the safety of divers persons then and there lawfully riding, passing and being conveyed in and upon the said engines and carriages as aforesaid then and there were greatly endangered."

The second count alleged that the defendant, at said Northampton, " on the fifth day of March now last past, wilfully, maliciously and unlawfully a certain engine and certain carriages of the Connecticut River Railroad Company, a corporation established by law, then and there lawfully passing over and along the railroad of said corporation there located and situate, did obstruct, by then and there placing and putting upon and across said railroad, there located and situate, one iron rail, and thereby the safety of divers persons, then and there lawfully riding, passing and being conveyed over and along said railroad at Northampton

in or upon the same, or aids or assists therein, shall be punished by solitary imprisonment in the state prison not exceeding ten days, and by confinement afterwards in said prison at hard labor not exceeding twenty years.

" SECTION 108. Whoever wilfully does or causes to be done anything with intent to obstruct any engine or carriage passing upon a railroad, or with intent to endanger the safety of persons conveyed in or upon the same, or aids or assists therein, shall be punished by imprisonment in the state prison not more than five years, or by fine not exceeding five hundred dollars and imprisonment in the county jail not more than one year."

aforesaid in and upon the engine and carriages aforesaid, did en-danger."

Before the jury were empanelled, the defendant filed, and *Dewey*, J., overruled, a motion to quash the first count for want of sufficient averments as to the intent and the time of the act charged. On the trial, the jury returned a verdict of guilty on the first count, and not guilty on the second count. The defend-ant alleged exceptions.

*D. W. Bond*, (*W. Allen* with him,) for the defendant.

*C. Allen*, Attorney General, for the Commonwealth.

BY THE COURT. The act charged on the 1st of March is not averred to have been done with any criminal intent; and the criminal intent charged on the 5th of March is not averred to have been accompanied by any act.

*Exceptions sustained ; first count quashed.*

THE SECOND CASE was an indictment on the Gen. Sts. c. 63, § 108, found and returned at December term 1870 of the superior court, (after the foregoing decision,) in the terms quoted from the first count of the former indictment, except that the act as well as the intent was charged to have been on the 5th of March 1869.

The defendant filed a plea that this indictment ought not to be further prosecuted, because of his acquittal at June term on the second count of the former indictment, " charging him with wil-fully and maliciously obstructing the engines and carriages of said Connecticut River Railroad Company by placing upon the rail-road of said company an iron rail, which placing of an iron rail upon said railroad so alleged in said indictment is the same act charged against the defendant in this indictment, and which said ' indictment of which the defendant was acquitted as aforesaid in-cluded the offence charged in this indictment, and the defendant in fact says that at the aforesaid term of this court he was lawfully acquitted of the same offence with which he is now charged ; " " and for further plea to this indictment the defendant says that he is not guilty in the manner and form as is alleged against him, and of this he puts himself on the country." To this plea the attorney for the Commonwealth demurred as insufficient in law

to bar the prosecution of the indictment; and *Brigham*, C. J., sustained the demurrer.

"At the trial, to prove the incorporation of the Connecticut River Railroad Company and the ownership of said railroad, the attorney for the Commonwealth offered the special Sts. of 1842, *c.* 41; 1844, *c.* 34; 1845, *c.* 8; 1845, *c.* 170; 1866, *c.* 141; 1867, *c.* 297; 1869, *c.* 260, § 6; 1869, *c.* 298; and also to show by parol evidence that the railroad known as the Connecticut River Railroad had been in use more than twenty years at the time of the offence charged in the indictment, and a company, known as the Connecticut River Railroad Company, had for all that time used, operated and conducted the said railroad, and in its management thereof had had persons acting as its officers, and otherwise did the acts of a railroad corporation. To the competency and sufficiency of this evidence the defendant objected, and his objection was overruled. No other evidence was offered upon this part of the case.

"The defendant contended that the evidence did not show that he put the rail upon the track, and further, that the evidence proved that the train was obstructed by the rail found thereon and asked the judge to rule that if the jury should find that it was obstructed, there could be no conviction under this indictment. The judge declined so to rule, but ruled that if the defendant, on the day alleged and at the place alleged in the indictment, put upon the track of the Connecticut River Railroad an iron rail, which as placed by him was capable of obstructing a train of cars then and there running on said track, so as to endanger the safety of persons conveyed in said cars, and under ordinary circumstances was likely to produce these results, he might be found guilty upon this indictment, if his act was with the intent to obstruct such train, and with the intent by that means to endanger the safety of persons conveyed in said train; that the defendant might be so found guilty upon such facts, notwithstanding that the iron rail, so put upon the track, was struck by such cars and tended in some degree to impede and check them in their running, and did to some extent obstruct them, and notwithstanding that the safety of the persons conveyed in said cars was not

in fact seriously endangered, either because the iron rail thus put on the track was not a sufficient obstacle to the cars by reason of the speed at which they were running, or because the iron rail was seen by the engineer conducting the engine drawing the train and before the engine arrived at it the train was checked by him so as to prevent any person conveyed therein from being in serious danger from the rail.

"The defendant also contended there was no evidence of any intent on his part to endanger the safety of passengers being conveyed over the road; and asked the judge to rule that the jury could not find him guilty, in the absence of any evidence of intent. The judge declined so to rule, but ruled that if the ordinary and usual consequences of putting such a rail as was proved by the evidence to have been placed by the defendant on the track, as the rail was placed, would be to obstruct railroad cars running on the track where such rail was placed thereon, and thereby to endanger the safety of persons conveyed in the cars, the jury were authorized to infer that the putting of such rail on such a place on the track was with the intention to obstruct the cars, and with the intent thereby to endanger the safety of the persons conveyed therein; that an act is wilfully and maliciously done, which is done voluntarily and done also in spite or in revenge or in wanton sport or in reckless mischief, not looking to a specific injury to any persons or an injury to a specific person, or to any specific injurious consequences to any person."

The jury returned a verdict of guilty; and the defendant alleged exceptions, which were argued at September term 1871.

*W. Allen & D. W. Bond,* for the defendant.  1. The plea of former acquittal was a bar; for the defendant could have been convicted of putting the rail across the track with intent to obstruct the train, under the second count of the previous indictment for obstructing the train by putting the rail across the track. *Commonwealth* v. *Hersey,* 2 Allen, 173, 179.  *Commonwealth* v. *Drum,* 19 Pick. 479.  *Commonwealth* v. *Eaton,* 15 Pick. 273. *Commonwealth* v. *Cooper,* 15 Mass. 187.  *State* v. *Shepard,* 7 Conn. 54.

2. If the judge's ruling was correct, that the defendant could be convicted by evidence which would have sustained the former charge, the plea was certainly a bar ; for of that charge he had been acquitted. And if the ruling was erroneous, the error entitles the defendant to a new trial. *Commonwealth* v. *Murphy*, 2 Allen, 163.

3. The ownership of the railroad was not proved. The Connecticut River Railroad Company did not appear to have been properly organized as a corporation. The St. of 1845, *c.* 8, provides for a union, under that name, of two other corporations, upon the vote of two thirds of the legal voters of each of them. But it did not appear that such a vote was had by either of them ; and nothing competent was introduced to cure the omission. The recognition of such an association as the Connecticut River Railroad Company by the legislature, and the facts that for more than twenty years there had been an association known by that name, and a railroad known as the Connecticut River Railroad, are only secondary evidence as to the organization ; and secondary evidence was not competent until it was shown that the records of the corporations, which they are required to keep, could not be produced. *Dillingham* v. *Snow*, 5 Mass. 547. *Stockbridge* v. *West Stockbridge*, 12 Mass. 400.

4. The jury were allowed to find that the act was done with intent to injure passengers, although there was no intent to injure anybody.

*C. Allen*, Attorney General, for the Commonwealth.

AMES, J. It is well settled that a general plea of not guilty in a criminal case ought not to be joined with a plea of previous acquittal or conviction of the same offence. The two issues are distinct, and cannot rightly be submitted to the jury at the same time. *Commonwealth* v. *Merrill*, 8 Allen, 545. *Commonwealth* v. *Goddard*, 13 Mass. 455. In this case, however, the plea in bar was overruled upon demurrer before the jury was empanelled ; and the trial afterwards was had, as we must assume, upon the general issue under the plea of not guilty.

An indictment had been found at a former term of the superior court against the defendant, in which he was charged, under Gen.

Sts. c. 63, § 107, with the crime of wilfully obstructing the engine and carriages of the Connecticut River Railroad Company, by placing an iron rail across their railroad, thereby endangering the safety of the passengers. Upon this charge he was tried and acquitted, and no question is made as to the sufficiency of the indictment. Under § 108 of the same chapter a new indictment is found against him, in which the crime charged consists in wilfully doing an act with intent to obstruct the engine and carriages of the same company, and he insists that the offence of which he is accused in this second indictment was included in the first. It may well be that both indictments refer to the same transaction, but that fact is not decisive as to the legal identity of the two offences. Thus a conviction for an illegal sale of intoxicating liquor is no bar to a subsequent charge of keeping open a shop for the transaction of business on the Lord's day, although the business transacted was the sale of liquor for which the party had been previously convicted. *Commonwealth* v. *Harrison*, 11 Gray, 308. The offences were entirely distinct. See also *Commonwealth* v. *Bubser*, 14 Gray, 83; *Commonwealth* v. *Harris*, 13 Allen, 534; *Commonwealth* v. *Cutler*, 9 Allen, 486. It is true that a man cannot be charged with wilfully, maliciously and unlawfully obstructing a railroad, without being supposed to have wilfully done or caused something to be done with the intent to accomplish such a design. But the test as to the legal identity of the two offences is to be found in the answer to this question, Could the prisoner, upon any evidence that might have been produced, have been convicted upon the first indictment of the offence that is charged in the second? Under Gen. Sts. c. 172, § 16, when a person indicted for felony is, on trial, acquitted by the verdict of part of the offence charged, and convicted of the residue, the person indicted shall be adjudged guilty of the offence, if any, which appears to the court to be substantially charged by the residue of the indictment. The effect of the acquittal in the first indictment would be equivalent to striking out the charge of actually obstructing the railroad, and it is difficult to see how, upon the indictment in that condition, he could have been convicted of the offence for which he is now prosecuted. The indict-

ment in that mutilated form would not contain in form or sub
stance the charge of wilfully doing any act with intent to obstruct
It is not enough to charge a malicious and unlawful intent with-
out also charging the act done in pursuance of that intent.   By
striking out of the indictment the act alleged to have been done,
namely, the actual obstruction of the railroad, there would re
main no charge of wilfully doing anything with intent to obstruct
the road and endanger the safety of passengers, and no offence
would be so charged as to warrant a conviction under the 108th
section of chapter 63.

Our conclusion therefore is, that the prisoner could not law-
fully have been convicted at the first trial of the offence charged
in the second indictment; and the plea in bar was therefore prop-
erly overruled.   *Commonwealth* v. *Murphy*, 2 Allen, 163.

With regard to the existence of the railroad corporation, and
its ownership of the railroad, the evidence offered was competent.
The charters granted by the legislature, including the act consol-
idating two distinct corporations into one under a new name, and
the public exercise and enjoyment of the franchises granted, by
an association under that name, for a long series of years, are
*primâ facie* evidence at least of the existence of such a corpora-
tion *de facto*, and of its possession and management of the road,
and of its ownership of the engines and carriages.   *Narragansett
Bank* v. *Atlantic Silk Co.* 3 Met. 282.   *Middlesex Husbandmen*
v. *Davis*, Ib. 133.   *Farmers' & Mechanics' Bank* v. *Jenks*, 7 Met.
592.   *United States Bank* v. *Dandridge*, 12 Wheat. 71.   *Ded-
ham Bank* v. *Chickering*, 3 Pick. 335.   *Appleton Insurance Co.*
v. *Jesser*, 5 Allen, 446.   *Hawes* v. *Anglo-Saxon Petroleum Co.*
101 Mass. 385, 393.

On the principle that a man must be presumed to intend the
obvious and natural consequences of his voluntary act, the jury
were properly instructed that if the defendant placed the rail
upon the track as described in the indictment, and if the ordi-
nary and usual consequences of so doing would be to obstruct
railroad cars running on said track, and thereby to endanger the
safety of persons conveyed in the cars, it was competent for
them to infer that he did it with that intent.   And it is not

Commonwealth *v.* Bakeman.

necessary, in order to complete the offence, that the guilty party should have had any individual in his mind as the particular person whom he wished to injure; or that he had any purpose other than to destroy property and endanger or destroy life, without knowing or caring who the sufferers might be. This we understand to have been the meaning of the instruction upon this point, and it appears to furnish the defendant no just ground of complaint.

The objection that, if the evidence proved that the train was in fact obstructed, the defendant could not be convicted under this indictment, is also untenable. If what was alleged in the indictment was sustained by the evidence, the conviction would be proper and right. The defendant cannot complain if less was charged against him than might have been proved. Thus in *Commonwealth* v. *McPike*, 3 Cush. 181, a defendant was held to have no just ground of objection to a conviction upon an indictment for manslaughter, because the facts proved on his trial showed that he had been guilty of murder. See also *Commonwealth* v. *Squire*, 1 Met. 258, 264; *Commonwealth* v. *Burke*, 14 Gray, 100.

The result is, that we find nothing erroneous in the rulings at the trial; and therefore the          *Exceptions are overruled.*