## COMMONWEALTH *vs.* JOHN CHASE.

Suffolk.     March 24. — May 13, 1879.     AMES & LORD, JJ., absent.

It is not necessary in an indictment, on the St. of 1874, *c.* 372, § 115, charging the defendant with disobeying the order of the superintendent of a drawbridge, and averring that the superintendent was "duly and legally appointed," to allege by whom he was appointed.

In an indictment, on the St. of 1874, *c.* 372, § 115, charging the defendant with disobeying the order of the superintendent of a drawbridge, an allegation that the bridge was the drawbridge of the B. & L. railroad corporation, a corporation duly and legally established by law, and was situate in the railroad of said corporation and over the waters of C. river, and was "duly erected and legally maintained as such drawbridge by said corporation," is a sufficient allegation that the corporation had a right to build a railroad across, and to maintain a drawbridge over, said river.

An indictment, on the St. of 1874, *c.* 372, § 115, alleged that the defendant made application to the superintendent of a drawbridge to pass the draw with his tug-boat; that, at the same time, a schooner made application to the superintendent to pass the draw; that the superintendent decided that the schooner had the right to pass the draw first, and before the tug-boat, and communicated said decision to the defendant; and that the defendant, knowing that the superintendent had full authority to make said decision, and that he had made it, wilfully refused to be governed by it, and attempted to pass the tug-boat through the draw first, and wilfully refused to withdraw his tug-boat to the rear and astern of the schooner, and wilfully threatened the superintendent to interfere

with and to jam said schooner, and to block up and impede said draw. *Held,* that the indictment contained a sufficiently precise allegation that the defendant disobeyed the order of the superintendent; and set forth a violation of the provisions of the above section.

The words "at the same time" in the St. of 1874, *c.* 372, § 110, refer to the time of the application of a vessel to pass a drawbridge, and not to the time of passing.

Misjoinder of two counts in an indictment is cured by a verdict for the defendant on one count.

The St. of 1872, *c.* 221, does not affect the right of the superintendent of a drawbridge, under the St. of 1874, *c.* 372, § 110, to decide the order in which a sailing vessel and a vessel propelled by steam shall pass through the draw.

An allegation in an indictment, on the St. of 1874, *c.* 372, § 115, that a drawbridge over a navigable stream was duly erected and legally maintained by a certain railroad corporation, is sustained by evidence that the corporation was authorized by its charter to build a bridge across the stream, and had built and maintained it for fifteen or twenty years.

If a railroad corporation has authority to build a drawbridge with piers over a navigable stream, the superintendent of the drawbridge has authority over the space between the piers, under the St. of 1874, *c.* 372, § 110, so far as is necessary for regulating the proper passage of vessels through the draw.

INDICTMENT in two counts, on the St. of 1874, *c.* 372, § 115. The first count was as follows: "The jurors for the Commonwealth of Massachusetts, on their oath present, that John Chase, of said Boston, on the twenty-fifth day of October in the year of our Lord one thousand eight hundred and seventy-eight, at said Boston, was the commander of a certain vessel, to wit, a tug-boat, then and there being in the waters of the Charles River, in said Boston; that Stephen H. Welch was then and there the superintendent, duly and legally appointed and qualified, of a certain drawbridge, to wit, the drawbridge of the Boston and Lowell Railroad Corporation, a corporation duly and legally established by law in said Commonwealth, situate and being in the railroad of said corporation, and over the draw and the waters of said Charles River, there in said Boston, as aforesaid, and being there duly erected and legally maintained as such drawbridge by said corporation; that said Chase then and there made application to said Welch, as such superintendent, to pass the said draw with said tug-boat; that then and there, and at the same time, a second vessel, to wit, the schooner Fawn, also made application to said Welch, as such superintendent, to pass said draw; that then and there said Welch, having full power and authority so to do, then decided that said schooner had the priority of right then to pass said draw first and before said tug-boat, and then communicated

said decision there to said Chase; that said Welch, as such superintendent, then began to open the drawbridge of said draw, and to prepare to pass said schooner Fawn through such draw, and before said tug-boat; that said Chase then and there, well knowing the decision as aforesaid of said Welch, and that said Welch then had there full power and authority to make said decision there as aforesaid, did then and there, wilfully and unlawfully, fail to be governed, and refused to be governed by said decision, and attempted to pass his said tug-boat through said drawbridge first, and did then and there, wilfully and unlawfully, refuse, being by said Welch lawfully requested and directed so to do, to withdraw his said tug-boat to the rear and astern of said schooner, and then and there did wilfully and unlawfully threaten said Welch, as such superintendent, to interfere with said schooner, and to jam said schooner, and block up and impede said draw: against the peace of said Commonwealth and the form of the statute in such case made and provided."

The second count set forth substantially the same facts, and charged the defendant with obstructing the superintendent in the lawful performance of his duties.

In the Superior Court, before the jury was empanelled, the defendant moved to quash the indictment, for the following reasons: " 1. It is not alleged in the indictment by whom the said Stephen H. Welch was appointed superintendent of the drawbridge. 2. It is not alleged in the indictment, with sufficient certainty, that the Boston and Lowell Railroad Corporation had then and there any legal right to build a railroad across Charles River, or to maintain a drawbridge over said river. 3. It is not alleged, with sufficient precision, in said indictment, that the defendant disobeyed any order then and there given by the said Stephen H. Welch, as to the priority of the right of the tug-boat to pass said draw. 4. The indictment does not set forth, with sufficient clearness and proper allegations, any offence under the statutes of this Commonwealth. 5. There is no averment in said indictment that the two counts in said indictment are different descriptions of the same offence." *Colburn*, J., overruled the motion; and the defendant excepted.

At the trial, the government, for the purpose of showing the authority of the Boston and Lowell Railroad Corporation to main-

tain a drawbridge over the waters of Charles River, referred to the St. of 1832, c. 87, authorizing the corporation to build such a bridge. There was evidence that the drawbridge had been built about fifteen or twenty years, and that it was built and had been kept in repair by the Boston and Lowell Railroad Corporation ; that the draw and bridge consisted of a passage for vessels, through the railroad, about thirty-six feet wide, spanned by a movable bridge, which, when opened, swung up-stream of the river ; that, from the draw, piers extended up-stream of the river, one on each side of the draw, the inner faces of the piers at their lower ends corresponding with the sides of the passage through the railroad, but diverged from each other somewhat as they advanced up-stream.

The superintendent of the drawbridge testified, that on October 25, 1878, the schooner Fawn, a sailing vessel, made application to pass the draw, and afterwards, but at about the same time, the defendant made application to pass the draw with a tug-boat propelled by steam ; that the witness decided that the schooner had priority of right to pass the draw first and before the tug-boat, and that he made this decision without regard to the fact that the tug-boat was propelled by steam, and without regard to the provisions of the St. of 1872, c. 221, in relation to vessels propelled by steam on Charles River ; and that, had not the schooner made application first, he should have allowed the tug-boat to pass the draw in about twenty minutes after her arrival.

It also appeared in evidence that the two vessels were about sixty or sixty-five feet from the drawbridge, and up Charles River, but in the space between the piers, and remained at that distance for about three hours, during which a contest between the defendant and the superintendent was kept up, and the tug-boat was then allowed to pass the draw first, with the consent of the draw-tender, acting under the advice of the harbor-master. At the time these vessels were at said distance from the drawbridge, but in such position that the Fawn could not pass unless the tug either passed first or was run back, the draw-tender ordered the defendant to withdraw his tug-boat to the rear and astern of the schooner, and let her pass through, which he refused to do, con tending that he had a right to pass through first, and also con-

tending that he was unable to obey the order by reason of other vessels above him.    The evidence was conflicting as to the ability of the defendant to obey the order.

There was no evidence offered that the defendant was obliged to obey the above order, or that the Boston and Lowell Railroad Corporation had any jurisdiction over the waters in Charles River, where the tug-boat was when said order was given, except the provisions of the statutes and the erection of the structures as before stated, or that the defendant interfered in any way to prevent the drawbridge being opened, or made his tug-boat fast to the piers of the Boston and Lowell Railroad Corporation.

The foregoing was all the material evidence offered bearing upon the points raised by the exceptions; and the defendant asked the court to instruct the jury as follows: " 1. The superintendent had no right to detain the tug-boat more than five minutes by the time-table for an out-going train to start, and except so far as might be necessary for the passage of railroad trains over said drawbridge, and in sight from the stopping-place at such draw.    2. The burden of proof is upon the government to show that the detention of the tug-boat more than five minutes was necessary for the purpose of allowing trains to pass over the drawbridge.    3. If the superintendent of the drawbridge made an order which was contrary to his duties, under the statute providing for the passage of vessels propelled by steam through said draw, then, even though the defendant claimed the right to pass said draw first, he is not guilty of the crime alleged, and a verdict of not guilty should be returned."

The judge refused to give the instructions requested; but instructed the jury as follows: " The Boston and Lowell Railroad Corporation had a right to build its railroad across Charles River, and construct a draw and drawbridge, and maintain the same in and over the waters of said river; and the fact that the drawbridge and draw had been built by the railroad company, and maintained, substantially, as they now exist, for fifteen or twenty years, is evidence upon which the jury may find that they were duly and legally erected and maintained.    The piers and the space between them are parts of the draw over which the superintendent had authority, and the defendant was bound to obey the decision and direction of the superintendent, and

allow the Fawn to pass the draw first and before the tug passed through, though the tug was propelled by steam and the Fawn was not. If the tug was in such position between the piers as to prevent the Fawn passing through the draw first, the defendant was bound to obey the order of the superintendent to withdraw his tug, so as to allow the Fawn to pass first, if there was no obstruction which prevented his doing so; but if he was unable to obey such order, he could not be found guilty in not obeying it."

The jury returned a verdict of guilty upon the first count, and of not guilty upon the second count. The defendant alleged exceptions.

*J. M. Browne*, for the defendant. 1. The motion to quash should have been allowed. The indictment does not set forth by whom the superintendent was appointed; nor that the Boston and Lowell Railroad Corporation had any right to construct a railroad over Charles River; nor that the applications to pass at the same time were made to the superintendent, but only that the applications were made at the same time. *Commonwealth* v. *O'Donnell*, 1 Allen, 593. As it appears from the indictment that the two counts are different descriptions of the same act, and as there is no averment to this effect, the defect is fatal, and cannot be cured by a verdict of not guilty on the second count. St. 1861, c. 181. *Commonwealth* v. *Cain*, 102 Mass. 487.

2. As the tug-boat was propelled by steam, and the schooner was a sailing-vessel, the tug-boat was entitled to priority, as it appears she could have passed through the draw in twenty minutes after her arrival. St. 1872, c. 221.

3. Whether the drawbridge had been built by the railroad company and maintained for a number of years was a question for the jury.

4. The instruction, "that the piers and the space between them are parts of the draw over which the superintendent had authority," was erroneous, as there was no evidence that the superintendent had any authority over the waters of Charles River where the tug-boat was when he gave his order, the tug-boat being then at a distance of sixty or sixty-five feet up the stream, and from the draw.

*G. Marston*, Attorney General, for the Commonwealth.

SOULE, J.   The motion to quash was properly overruled.
1. The allegation in the indictment that Welch was the superintendent of the drawbridge, "duly and legally appointed," is a sufficient statement of the fact.   It was not necessary to state by whom he was appointed.

2. The allegation that the bridge was the drawbridge of the Boston and Lowell Railroad Corporation, a corporation duly and legally established by law, and was situate in the railroad of said corporation and over the waters of Charles River, and was "duly erected and legally maintained as such drawbridge by said corporation," is a sufficient allegation that that corporation had a right to build a railroad across said river, and to maintain a drawbridge over the river.

3. The indictment sets forth that the defendant made application to the superintendent to pass the draw with his tug-boat, and that at the same time a second vessel, to wit, the schooner Fawn, made application to the superintendent to pass the draw; that the superintendent decided that the schooner had the priority of right to pass the draw first, and before said tug-boat, and communicated said decision to the defendant; and that the defendant, knowing that the superintendent had full authority to make said decision, and that he had made it, wilfully refused to be governed by it, and attempted to pass the tug-boat through the draw first, and wilfully refused to withdraw his tug-boat to the rear and astern of the schooner, and wilfully threatened the superintendent to interfere with and to jam said schooner and to block up and impede said draw.   This is a sufficiently precise allegation that the defendant disobeyed the order of the superintendent.   The statute gives the superintendent absolute power to decide which of two vessels shall pass the draw first, when two apply at the same time.   St. 1874, *c.* 372, § 110.   The construction contended for by the defendant, that the power given to the superintendent is merely to decide when two vessels apply to pass simultaneously, or abreast, is manifestly incorrect.   The words " at the same time " refer clearly to the time of the application, not to the time of passing.

4. The first count sets forth a violation of the provision of § 110, that commanders of vessels applying to pass the draw shall be governed by him as to priority of right, when two or more vessels apply to pass at the same time.

5. It is unnecessary to consider whether the indictment is bad, as having two counts charging different offences depending on the same facts, without an averment that the different counts are different descriptions of the same transaction, because, the jury having negatived the second count, it is as if it had never been inserted in the indictment. *Commonwealth* v. *Packard*, 5 Gray, 101. *Commonwealth* v. *Cain*, 102 Mass. 487.

The instructions asked for by the defendant were properly refused. The statute on which he relied, St. 1872, *c.* 221, is intended merely to regulate the opening of drawbridges for the passage of vessels propelled by steam, and has no reference to delays of such vessels in consequence of the presence of sailing vessels at the draw, or by reason of accidental obstructions.

The instructions given were correct. There does not appear to have been any conflict of testimony as to the powers and authority of the railroad corporation under its charter; and the fact that it had built the bridge and draw, and maintained them for fifteen or twenty years, was evidence on which the jury might find that the structures were duly and legally erected and maintained. *Commonwealth* v. *Bakeman*, 105 Mass. 53.

The piers were a part of the structure provided for by the act which authorized the construction of the drawbridge, and they and the space between them were parts over which the superintendent had authority, so far as was necessary for regulating the proper passage of vessels through the draw in the order prescribed by him. The defendant was legally bound to obey the direction of the superintendent, and permit the sailing vessel to pass the draw first, and if his tug was in such position as to interfere with such passage, and he could withdraw it, he was bound to do so.                    *Exceptions overruled.*