## COMMONWEALTH *vs.* HENRY M. LEACH.

Middlesex.   January 29, 1894. — February 28, 1894.

Present: FIELD, C. J., ALLEN, HOLMES, & MORTON, JJ.

*Trial — Instructions to Jury — Exclusive Power and Opportunity of Defendant to commit Crime.*

The defendant in a criminal case was convicted upon the first count of an indictment, and acquitted upon the second count. A new trial was granted, at which a plea of former acquittal was overruled, but the prosecution of the second count was abandoned before the argument to the jury, who were instructed by the judge that no claim was made of a conviction upon that count, and that they might return a verdict of not guilty thereon, which they did. No evidence was introduced on either side except such as was competent and material under the first count. *Held*, that, if it was erroneous to put the defendant to trial on the second count, the error was cured by the abandonment of it, and by the verdict, and he was in no way prejudiced.

At the trial of an indictment for attempting to procure the miscarriage of a woman, the defendant asked the judge to instruct the jury that they must be as fully convinced of the defendant's guilt from the circumstances as if the allegations

of the indictment had been supported by direct proof; that they must be distinctly persuaded of the defendant's guilt before they could lawfully return a verdict against him, and the difficulty of proving a negative should, as in all cases of circumstantial evidence, be allowed due weight; and also asked for a third instruction, which was given in terms. The judge refused to give the other two instructions requested, and instructed the jury that the defendant was not obliged to prove his innocence, or to disprove the charge against him; that the proof must establish the charge beyond all reasonable doubt; that a well grounded suspicion against the defendant was not enough, no matter how strong the suspicion might be; that something more must be shown than a probability of guilt, however strong that might be; and reasonable doubt and moral certainty, and also the nature of circumstantial evidence, were fully explained; and further instructed the jury that the opportunity to commit a crime was not evidence that the person committed it, and the want of opportunity was evidence that the person did not commit it. *Held,* that the defendant had no ground of exception.

In order to convict on circumstantial evidence in a criminal case, it is not necessary to show that the crime could not have been committed by any other person than the defendant, or that no other person than the defendant had an opportunity to commit it.

INDICTMENT, in three counts, returned into the Superior Court at the June term, 1891, alleging that the defendant attempted to procure the miscarriage of Mary A. Murphy on April 25, 1891, in consequence whereof she died on the following day. After the former decision, reported 156 Mass. 99, the case was tried in the Superior Court, before *Bond,* J., who allowed a bill of exceptions, in substance as follows.

The defendant before the jury were impanelled filed a plea of former acquittal on the second and third counts of the indictment. The government demurred to the plea, and the judge sustained the demurrer; and the defendant excepted.

No order or direction was made by the Supreme Judicial Court as to the new trial of the case.

At the trial the government offered evidence to prove that Mary A. Murphy came to her death by peritonitis induced by the rupture of her uterus by some instrument, and produced a sea-tangled tent, and offered evidence tending to show that the tent was found in the pelvic cavity of the deceased; that it had reached that cavity by having passed through the *os uteri,* and through the posterior wall of the uterus; and that the tent was applied to produce abortion.

It was in evidence that the last time the deceased was seen outside of the house of the defendant, where she had been em-

ployed as a domestic for eighteen months prior to her decease, was on April 16, 1891; and that she had been about the house, but not well, so as to perform her usual domestic duties, up to Sunday morning, April 26, the day of her decease.

It appeared in evidence that Lizzie Murphy, a sister of the deceased, went to the house on Sunday afternoon about three o'clock; and that the only conversation she had with the defendant was when he came into the room where she was with a cup in his hand and a spoon. She testified as follows: " I asked him what was the matter with my sister, and he said she was bilious, had bile on the liver; it would frighten anybody to see the stuff she vomited. That is all the conversation I had with him." It also appeared in evidence that the defendant's wife, her mother, and her niece were present when the witness had the conversation with the defendant; that his family, during the last year that Mary A. Murphy resided in it as a domestic, consisted of himself, his wife, and his two boys, respectively of the age of eleven and nine years, Mrs. Randall, the mother of his wife, and William A. Randall, a brother of his wife, a man about thirty years of age, who was a boarder in the family, and who absented himself from the house on April 25, 1891, and returned on April 27, and on that day, which was the day after Mary Murphy died, he left the house and went elsewhere to reside; and that Mary A. Murphy stated that when she was not well she and Randall did the housework, that he helped her to do it. It was also in evidence that Mary A. Murphy was nineteen years of age at the time of her death; that while she was a domestic in the defendant's family she was allowed a latch-key, and one afternoon and evening of each week; and that she usually went out at about two in the afternoon and returned in the evening of the same day between nine and ten o'clock.

There was no evidence introduced by the government or by the defendant but such as was competent and material on the first count of the indictment. The same evidence was also competent under the second count of the indictment.

Before the argument the district attorney suggested to the judge that he would consent to a change of the ruling sustaining the demurrer, stating that he should rely only on the first count. This statement was made in the presence of the defendant's

counsel, but was not made in the hearing of the jury. The judge declined to change the ruling.

The defendant asked the judge to instruct the jury as follows:

"1. The jury must be as fully convinced of the guilt of the defendant from the circumstances and combination of circumstances as if direct proof had been brought in support of the allegations in the indictment.

"2. The case of innocent persons must be of a nature to afford very little evidence; but the jury must be distinctly persuaded of the guilt of the prisoner before they can lawfully return a verdict against him, and the difficulty of proving a negative shall in this, as in all cases of circumstantial evidence, be allowed due weight; and it is not always possible for innocent persons to explain facts that are against them.

"3. In order to convict on circumstantial evidence, you must be satisfied that the act could not have been done by another person than the person charged in the indictment, and on this point the government must satisfy you beyond a reasonable doubt.

"The trial proceeds upon the assumption, and the government is required to prove, that somebody other than Mary A. Murphy performed the operation, with intent to procure a miscarriage, and the operation which caused her death. If she performed that operation upon herself, this defendant cannot be convicted. And if in regard to that matter, weighing all the evidence carefully, and availing yourselves of the knowledge which it is assumed you have in common with men in general, there is a reasonable doubt in your minds as to whether Mary A. Murphy did in fact perform this operation upon herself, the defendant must be acquitted."

The judge refused to give the instructions requested, and, among other things, instructed the jury as follows:

"Now you understand, of course, that a defendant is not obliged, even here, to prove that he is not guilty of the offence charged against him. In theory, the defendant would have a right to rest upon his plea which he records here of not guilty when the indictment is read to him, and say no more, offer no evidence, and it would be the duty of the jury to acquit the defendant unless the government has proved to you with that

degree of certainty that is required in criminal cases that the defendant is guilty of the offence charged. He is not to disprove the charge; the burden is on the Commonwealth. . . .

" In a criminal case the degree of certainty that is required of the government to establish the guilt of a defendant is, as is sometimes said, that the proof must establish the guilt beyond all reasonable doubt. . . .

" It is not enough in a criminal case for the government to satisfy the jury that there is a well grounded suspicion against the defendant that he committed the crime that is charged against him, no matter how strong the suspicion may be. . . . Something more must be shown than that there is a possibility that the defendant committed the act that is charged against him. Something more than the fact that there is a probability, however strong that may be, that the defendant committed the act charged against him must be shown, before the jury is warranted in finding a verdict of guilty under our system of jury trials in criminal cases. . . .

" But yet the government is not obliged to prove that the defendant is guilty of the offence charged beyond all possible doubt. That is a strictness that is not required. . . . It is only the establishment of the charge beyond all reasonable doubt, not beyond all doubt.

" Now a reasonable doubt is sometimes said to be a doubt arising on a fair consideration of the evidence in a case, for which a good reason can be given; and it has been explained to be a state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge, — a certainty that convinces and directs the understanding, and satisfies the reason and judgment of those who are bound to act conscientiously upon it. It is that certainty that is required in criminal cases.

" A moral certainty is that state of the judgment grounded upon an adequate amount of appropriate evidence, which induces a man of sound mind and of ordinary prudence to act without hesitation in the most important concerns of human life. A juror may be said to be morally certain, when he is so fully con-

vinced by the evidence of the truth of the facts sought to be proved that he would venture to act on his conviction in matters of the highest importance to his own interests. When a juror is satisfied upon the evidence to that extent, then he is satisfied, within the meaning of the law, the case has been established with that degree of certainty that is required in criminal cases. Anything short of that fails to establish the charge; and although the juror may not be able to say that he is satisfied the person is not guilty, yet the verdict must be not guilty, which is only another way of saying that the case is not proven. . . .

"Now there is another matter that applies to this case, and to every case situated as this is, that I desire to call your attention to, and that is the kind of evidence that the government, or that the defendant in the trial of a cause, is oftentimes obliged to rely upon. We have what we term in law two classes of evidence in this particular; that is, we have direct evidence of the fact charged, and we have circumstantial evidence of the fact charged. There is no direct evidence of the fact charged here in this case; the evidence is circumstantial; and what is meant by that is that the government undertook to establish here certain facts, not the fact that is charged, but certain surrounding facts. And they say, having established those facts, those circumstances, they so surround this case that the inevitable conclusion is that the person committed the act that is charged against him.

"Now sometimes jurymen get the impression that such evidence is not reliable, that it won't do to rely upon circumstances. Men are so constituted that some are more easily convinced by some circumstances than others. But experience has shown that, if we were unable to rely upon what is termed circumstantial evidence, there would be very little that could be done in the court-room with reference to criminal business. The only difficulty is, not in the admission of that sort of evidence, but in the care that should be exercised in the consideration of the circumstances, and the drawing of the inference which is asked to be drawn on the one side and the other from the facts that are so established.

"A long experience would have determined, I think, would have satisfied you, that what is termed direct evidence in the

court-room is oftentimes more unreliable than circumstantial
evidence, and yet you may think that is strange.   That is, you
say, how can anything be more satisfactory than the testimony
of a witness who comes upon the witness stand and swears to
the commission of the act, to the seeing of it done himself, by
the defendant?   What can be more satisfactory than that?

" If you had been in the court-house very long you would
learn that there is very much of that class of evidence that is
unworthy of belief perhaps.   There are possibilities connected
with that sort of evidence which, if you had had much experi-
ence, you would see at once make it no more satisfactory than
circumstantial evidence. . . .

" There are three counts, as it is termed, in this indictment;
and if I understand the position of the government with ref-
erence to it, it is that there is no claim made that there should
be any conviction here unless it is upon the first count in the
indictment.   So that I shall have no occasion to explain to you
what it would be necessary to prove in order to find a verdict of
guilty on what may be termed the second and third counts,
and therefore you may return a verdict of not guilty upon the
second and third counts, and determine what verdict you should
return, and return such a one as you find you are compelled to
return on the evidence, on the first count. . . .

" Now, in the first place, to begin with the elements in their
order, as they are set out, the instrument that it is asserted was
used in this case is what has been termed here a sea-tangled
tent ;   and the charge is that this defendant inserted that instru-
ment into the womb of Mary Murphy.

" Now you have to consider here, at the outset, if this instru-
ment was inserted by some one with the intent that is set out
in the indictment, whether it was inserted by Mary Murphy
herself or by the defendant.   For if it was inserted by her, even
for the purpose of producing a miscarriage, the defendant can-
not be convicted under this count in the indictment. . . . If
you are unable on all the evidence to determine whether this
instrument was inserted by Mary Murphy or by the defendant,
then the defendant cannot be convicted upon this count.   You
must be satisfied that the defendant inserted the instrument.
I do not mean to say, of course, that if you are satisfied that he

inserted it, that that is sufficient; but that is one step that must be proved, that he inserted it; and if you cannot tell on the evidence whether he did it or whether she did it, then the defendant cannot be convicted. The trial proceeds upon the assumption, and the government is required to prove, that somebody other than Mary Murphy performed the operation, with intent to produce a miscarriage, and that the operation caused her death. If she performed that operation upon herself, the defendant cannot be convicted. And if, in regard to that matter, weighing all the evidence carefully, and availing yourselves of the knowledge which it is assumed you have in common with men in general, there is a reasonable doubt in your minds as to whether Mary Murphy did in fact perform this operation upon herself, the defendant must be acquitted. . . .

" Now the government claims that there is other evidence bearing upon this question besides" certain evidence referred to, " as to the possibility of Mary Murphy doing this, and besides the instrument that the defendant had, which they contend the evidence shows had been used, or a similar instrument, upon Mary Murphy, and that it shows that the defendant was the one who had operated upon this woman, and that he had inserted the instrument, that he was the one that had undertaken to remove it because he had inserted it, and they ask you to consider those circumstances. It is claimed that he was at home during all the week prior to this time, and that for this reason he had an opportunity to commit the crime. Here you should bear in mind, however, that the opportunity to commit a crime is not evidence that the person committed it. The want of opportunity is evidence that the person did not commit it. But you can readily see, when a crime has been committed in a particular locality, there might be a hundred persons who had the opportunity to commit the crime, and therefore the opportunity is not evidence that all the hundred persons committed it. Still, it is a matter to be considered always, for the reason that the want of opportunity is evidence that the person did not commit the offence."

At the conclusion of the charge, the defendant requested the judge to instruct the jury that an attempt to remove the tent would not warrant conviction on the first count contained in the

indictment; that, in order to, convict the defendant, the jury must be satisfied that no person other than he had an opportunity to insert the tent into the womb of Mary A. Murphy, and that she did not herself insert the tent into her own womb.

The judge refused to give these instructions; and the defendant excepted.

The jury returned a verdict of guilty on the first count, and not guilty on the other counts; and the defendant alleged exceptions.

*H. D. Hadlock*, for the defendant.

*F. N. Wier*, District Attorney, for the plaintiff.

ALLEN, J. The defendant at the former trial was convicted on the first count of the indictment, and acquitted upon the second and third counts. A new trial having been granted, some difference of opinion has been expressed elsewhere upon the question whether a defendant under such circumstances could rightly be placed on trial again on the second and third counts. 1 Bish. Crim. Law, (8th ed.) §§ 1004, 1005. Assuming that he could not be, the prosecution of those counts in the present case was abandoned before the arguments to the jury, and the judge in his charge to the jury informed them that no claim was made of a conviction upon those counts, and that they might return a verdict of not guilty upon them, which the jury accordingly did. No evidence was introduced on either side except such as was competent and material on the first count. If it was erroneous to put the defendant to trial upon those counts, the error was cured by the abandonment of them, and by the verdict, and we cannot see that he was in any way prejudiced. Many decisions illustrate this, though upon slightly different facts. *Commonwealth* v. *Packard*, 5 Gray, 101. *Commonwealth* v. *Lincoln*, 9 Gray, 288. *Commonwealth* v. *Chase*, 127 Mass. 7. *Commonwealth* v. *Adams*, 127 Mass. 15. *Commonwealth* v. *Andrews*, 132 Mass. 263. *Commonwealth* v. *Boston & Maine Railroad*, 133 Mass. 383. *Commonwealth* v. *Miller*, 150 Mass. 69. *Commonwealth* v. *Jacobs*, 152 Mass. 276. *Commonwealth* v. *Meserve*, 154 Mass. 64, 69. *Commonwealth* v. *Lapham*, 156 Mass. 480. *Commonwealth* v. *Bingham*, 158 Mass. 169.

The instructions to the jury upon the matters embraced in the first two requests for instructions were clear and sufficient.

The judge told them that the proof must establish the charge beyond all reasonable doubt; that a well grounded suspicion was not enough, no matter how strong the suspicion might be; that something more must be shown than a probability of guilt, however strong that might be; and reasonable doubt and moral certainty were carefully explained. The remarks upon the nature of circumstantial evidence went as far as the law required, and it was not necessary to adopt the words used by counsel. The judge also clearly instructed the jury that the defendant was not bound to prove his innocence, or to disprove the charge against him. The greater part of the third request was given in terms. The first part of it, and also the request after the conclusion of the charge, were plainly wrong. They went too far. It was not necessary for the government to prove that the criminal act could not have been done by anybody else than the defendant, or that no other person than the defendant had an opportunity to do it. Many honest persons, against whom no suspicion existed, might have been able to do it, and have had an opportunity to do it. In order to prove that the defendant committed a crime, it is not necessary to show that it could not have been committed by anybody else, or that nobody else had an opportunity to commit it. All of the defendant's rights were preserved by the instructions to the jury.

*Exceptions overruled.*