WILLIAM NAGEL

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed October 23, 1907.*

1. CRIMINAL LAW—*release for want of speedy trial does not bar prosecutions for other offenses growing out of same transaction.* The fact that a person indicted for murder is set at liberty for want of trial within the statutory period does not bar further prosecution for the crimes of robbery or burglary with intent to murder, growing out of the same transaction but of which he was not in peril of conviction under the indictment for murder.

2. SAME—*when former acquittal cannot be pleaded in bar.* Former acquittal on the charge of robbery cannot be pleaded in bar of an indictment for burglary with intent to murder, although the same transaction is the basis for both indictments; nor are the People estopped by such former acquittal to prove any of the facts connected with the crime charged in the indictment, although the evidence has all been introduced on the former trial.

3. SAME—*when personal presence of prisoner is not necessary.* Personal presence of a prisoner is not necessary in a proceeding connected with the case subsequent to his trial and sentence, where such proceeding relates only to the correction of the record.

4. SAME—*when defect in record is waived.* Failure of the record of a criminal case tried upon a change of venue to show that an indictment was returned by a grand jury in the county where the trial took place, is waived by a statement of the prisoner's counsel in his brief admitting that the indictment was properly returned in the county from which the change of venue was taken and that objection was made on that point in the trial court.

5. SAME—*when action of trial court will be presumed to have been correct.*  The action of the trial court in permitting the record of a criminal case to be amended will be presumed, on writ of error, to have been correct, where there is no bill of exceptions showing the alleged facts that the term of court at which the trial took place had passed and that there were no minutes of the judge by which the amendment could have been properly made.

6. BURGLARY—*describing structure as a "houseboat" is proper though it is drawn up on land.*  An indictment for burglary with intent to commit murder properly describes the structure where the crime took place as a "houseboat" instead of "dwelling house," even though it was temporarily drawn up on an island, upon which the occupant was engaged in raising chickens and garden stuff during the summer.

WRIT OF ERROR to the Circuit Court of Henry county; the Hon. EMERY C. GRAVES, Judge, presiding.

H. A. WELD, and ADAIR PLEASANTS, for plaintiff in error.

W. H. STEAD, Attorney General, JOHN K. SCOTT, State's Attorney of Rock Island county, and CHARLES E. STURTZ, State's Attorney of Henry county, for the People.

Mr. JUSTICE CARTER delivered the opinion of the court:

Plaintiff in error was taken into custody by the sheriff of Rock Island county August 5, 1905, upon a *mittimus* of the coroner of that county, on the charge of murder, and was afterwards, at the September term of the circuit court of that county, indicted for that crime.  That court on January 10, 1906, ordered him set at liberty upon his application made under section 18 of division 13 of the Criminal Code, (Hurd's Stat. 1905, p. 746,) for the reason that he was not tried at a term commencing within four months after the date of his commitment.  A new indictment for murder was procured against him and was returned into the circuit court the next day, by virtue of which he was kept in imprisonment.  At the May term, 1906, of said court four separate

indictments were returned against him, charging, respectively, burglary with intent to murder, burglary with intent to rob, burglary and larceny (in one indictment) and robbery. On his motion a change of venue was taken to the circuit court of Henry county, and he was transferred to the custody of the sheriff of that county, who retained him by virtue of the second charge for murder, as well as the other indictments. Nagel thereafter petitioned this court for a writ of *habeas corpus,* and this petition being granted, it was ordered that he be discharged from further imprisonment or detention by reason of the indictment for the crime of murder returned against him January 11, 1906, but it was stated that the judgment was not to affect or interfere with his detention by reason of the other indictments against him. (*People ex rel.* v. *Heider,* 225 Ill. 347.) Plaintiff in error was tried in the Henry county circuit court upon the indictment charging him with robbery, and acquitted. He was then tried in the same court upon the indictment charging him with burglary with intent to murder, and found guilty by the jury and sentenced to the penitentiary. To reverse this sentence he now brings this writ of error.

The testimony disclosed that Carl Brady, a German, from forty to forty-five years of age and unmarried, was living in a houseboat on a wooded island in the Mississippi river on the Illinois side and about five miles above Muscatine, Iowa. The houseboat appears to have been pulled up on the sand at the end of the island, and the deceased during the spring of 1905 was living there, engaged in raising chickens and garden stuff. On June 9, 1905, about the middle of the afternoon, plaintiff in error and Josephine Collett, a woman with whom he had been living for several years but who testified she was not his wife and had never considered herself as such, were rowed over to the island on which Brady lived, by one Alonzo F. Brown. The latter testified that he wanted to get a boat which Brady had borrowed of him. On reaching the island they failed to find

Brady in or about the houseboat. Brown testified that he walked into the timber about seventy-five or one hundred yards, when he discovered that plaintiff in error was behind him and noticed that he had a gun in his pocket, and that he thereupon decided to go home, and left plaintiff in error and the woman remaining on the island. The testimony as to what happened after Brown's departure and before Nagel was taken into custody rests largely upon the evidence of the woman, Josephine Collett, the only person present on the island at the time of the crime, save plaintiff in error and the victim. Her testimony is, that after Brown left they remained by the houseboat, witness sitting on a pile of ties and Nagel having a revolver in his hand, from which he fired two bullets into the ties. In a little while Brady came. He spoke to Nagel and was introduced by the latter to the woman. On the request of Brady, Nagel helped him to carry some chicken coops into the chicken house, and the two men then went around the front of the cabin, but the witness did not know what they were talking about, as they talked in German. Towards evening it commenced to rain, with thunder and lightning, and the witness asked Nagel to go home, but he replied that he was not ready to go. She then started crying. Soon after, plaintiff in error and Brady began quarreling. Nagel asked Brady to lend him a flat-boat to go across to a neighboring island, where the witness and plaintiff in error lived, and Brady refused to let them have the boat. Thereupon plaintiff in error asked him to let them stay all night, and he said he would let Nagel stay but the woman could not. Nagel then said if the woman could not stay he would not stay. This conversation had apparently taken place in the houseboat, the woman remaining outside while it was going on. Plaintiff in error came outside and Brady shut the door and said he did not want them there at all. Nagel went back in and began fussing with Brady, and there were three shots. When the shots were fired the woman screamed, and plaintiff in error came out

and swore at her and called her names and told her to keep still,—that he did not want people to know what he was doing there. He pointed his revolver at her and swore he would blow her brains out. He then returned inside the cabin and in a little time came out and showed her some money ($7.60) and a watch, all of which he stated to her he had taken off of Brady. He went back into the cabin of the boat and four shots were heard by the witness, followed by groans and cries and moaning, then pounding, and then two shots were fired at the last. She claimed she heard six shots after plaintiff in error showed her the money and watch. She next saw plaintiff in error at two o'clock in the morning, when he came out of the houseboat cabin and said, "The old gazabo is dead." Immediately thereafter he put on an undershirt and drawers of Brady's. Plaintiff in error and the woman continued to occupy the houseboat until they were arrested, August 3, 1905, when a deputy sheriff of Rock Island county, with others, went to the island about eleven o'clock in the morning and found them in bed there. Nagel was afterwards taken back to the locality and pointed out several spots in which he said the body would be found, but, after digging, the information proved incorrect. Finally he designated a place directly behind the houseboat, and the body was found there, charred and badly decomposed, with the side of the skull crushed in, which Nagel claimed was caused by a post in trying to shove the body into a hole in the ground.

Plaintiff in error's first contention is, as stated in the briefs, that "any person committed for a criminal offense * * * and set at liberty by the court because not tried at a term of court beginning within four months of his commitment cannot afterward be indicted and tried for another offense carved out of the transaction constituting the crime for which he was first committed;" that this right to be set at liberty is not limited by the crime charged in the warrant of commitment. This question, while not identical, bears

very close analogy to the question arising under that pro-
vision of the bill of rights which declares that "no person
shall be  *  *  *  twice put in jeopardy for the same of-
fense." What constitutes the "same offense" was discussed
at length by this court in the early case of *Freeland* v. *Peo-
ple,* 16 Ill. 380. It was there stated, that "if the defendant,
upon the first indictment, could not have been convicted of
the *offense* described in the second, then an acquittal or con-
viction upon the former is no bar to the latter.  *  *  *  If
defendant could not by any legal possibility have been con-
victed upon the former prosecution of the *offense* charged
in the second, he can in no just sense be said to be in peril
of a second conviction on the same *offense*,"—citing in sup-
port of this doctrine, 1 Chitty's Crim. Law, sec. 456; Arch-
bold's Crim. Pl. sec. 82; 3 Greenleaf on Evidence, sec. 36,
and other authorities. This same doctrine has been ap-
proved by this court in *Guedel* v. *People,* 43 Ill. 226, *Fergu-
son* v. *People,* 90 id. 510, *Campbell* v. *People,* 109 id. 565,
and *Spears* v. *People,* 220 id. 72; see, also, *Commonwealth*
v. *Bakeman,* 105 Mass. 53; *State* v. *Ingalls,* 98 Iowa, 728;
*State* v. *Warner,* 14 Ind. 571; Wharton's Crim. Pl. & Pr.
(8th ed.) sec. 471, and authorities there cited. Plainly, the
plaintiff in error could not properly have been convicted on
the former trial for *robbery,* of the offense charged in the
indictment in the present case,—*burglary* with *intent to mur-
der.* No reference is made in the indictment for robbery,
of the crime having been committed in a building or boat
or any other place which the statute names in defining burg-
lary, nor was plaintiff in error accused in that indictment of
wrongfully entering any such place.

Counsel for plaintiff in error further insist that the trial
court erred in permitting any evidence to be introduced
which was heard on the trial charging robbery, as to the
facts which they claim were conclusively settled by the ver-
dict in that case. It is apparent from this record that all the
crimes charged in all the indictments grew out of the same

act or series of acts. This court in *Freeland* v. *People, supra,* stated (p. 383) : "It is not enough that the *act* is the same, for by the same act the party may commit several offenses, *in law.* The crime of murder may embrace an assault with intent to commit rape or other felony; an assault with a deadly weapon with intent to inflict a bodily injury; an assault and battery; and if two or more persons are present and engaged in the wrongful act, may embrace riot. In the same act of feloniously taking a quantity of goods the party may, in law, be guilty of as many crimes as there are separate owners of the goods stolen, and may be punished as for so many distinct larcenies. If a person steals a horse, saddle and bridle, at the same time, by the same act, he may commit, in law, three several larcenies. * * * If a former conviction or acquittal upon a prosecution for the same *act* is always a bar to a subsequent prosecution for any crime consisting in the same *act,* it would follow that a conviction or acquittal upon a prosecution for assault and battery might bar a prosecution for an assault with intent to commit murder, or even for murder. With such a rule high crimes would often be inadequately punished or not punished at all."

Under the authorities cited it is evident that the former acquittal on the charge of robbery cannot be pleaded as a bar to this indictment. Nor was the State estopped by it from proving any of the facts connected with the crime charged in this indictment, although much or all of this evidence had been introduced in the former trial.

Counsel for plaintiff in error concede, and there can be no doubt, that the doctrine of former jeopardy cannot be invoked on this trial. This being true, we are of the opinion that the fact that plaintiff in error was set at liberty on the indictment for murder for want of a trial within the statutory time does not bar his further trial for those crimes, although growing out of the same transaction, of which he was not in peril of conviction under the indictment for mur-

der. The evils that counsel contend would arise from this holding were considered by this court in *Freeland* v. *People, supra,* where it was said (p. 383) : "In all such cases the attorney for the People may, and should, refuse to prosecute beyond the exigencies of public policy, the objects of punishment being example and reformation." This statement, the doctrine of which we here again approve, is a complete answer to the argument of counsel on that point.

Counsel also urge that the record in this case as originally filed in this court did not show the empaneling of the grand jury nor the return of the indictment in the Henry county circuit court, although they admitted in their briefs when they first urged this point that the indictment on which plaintiff in error was tried was, in fact, returned at the May term, 1906, of the Rock Island county circuit court and that no objection was made on this point in the trial court. In *Perteet* v. *People,* 70 Ill. 171, it was held that a prisoner, even in a capital case, might by express consent waive his rights. In *McKinney* v. *People,* 2 Gilm. 540, it was said (p. 557) that the law, by furnishing the prisoner with counsel to defend him, has placed him on the same platform with all other defendants, and if he neglects in proper time to insist on his rights he waives them. We are inclined to the opinion that these statements in the brief of counsel for plaintiff in error waived the right to insist on this point. However that may be, the Attorney General, at the April term, 1907, of this court, suggested a diminution of the record and asked for leave to supply. This motion was allowed, and an additional record was filed showing that on June 3, 1906, the circuit court of Henry county, after notice to counsel for the plaintiff in error, permitted the record of that county to be amended by filing certified copies of the proceedings in the circuit court of Rock Island county, to the effect that this indictment had been returned against plaintiff in error by the grand jury of Rock Island county at the May term of the Rock Island circuit court.

It is insisted that the Henry county circuit court was without jurisdiction to permit the filing of this additional transcript of the record, as the term at which the trial took place had long since expired and no minutes of the judge or clerk existed upon which to base this amendment. No bill of exceptions relative to these facts having been filed, the presumption must be indulged that the action of the lower court was correct. *Wallahan* v. *People*, 40 Ill. 103; *Chicago, Milwaukee and St. Paul Railway Co.* v. *Walsh*, 150 id. 607.

In this same connection it is also insisted that the law requires the personal presence of the plaintiff in error in proceedings connected with his case subsequent to his trial and sentence. The record shows that due notice was given to the plaintiff in error's counsel of the motion in question. When these subsequent proceedings relate, as they did in this instance, to the correction of the record, we do not think the presence of the plaintiff in error was required. This was the holding in *State* v. *Westfall*, 49 Iowa, 328. See, also, 12 Cyc. 526, and authorities there cited. We held in *Sullivan* v. *People*, 156 Ill. 94, that errors assigned in a criminal case on the basis of an imperfect record are not available where the true record has subsequently been brought up and they do not apply to it. In that case we referred to the authorities relied upon here by plaintiff in error as to this point, and held that they did not apply after the record had been corrected. In *Rainey* v. *People*, 3 Gilm. 71, where a very similar point was under consideration, it was stated that it was the duty of the Attorney General to see that the defects in the record were supplied, and, when necessary, to suggest a diminution of the record and sue out a *certiorari* to the court below. Whatever defect may have existed in the original record in this court has been cured by the additional transcript filed.

It is also urged as ground for reversal that the structure described in the indictment as a houseboat was, in fact, a

dwelling house, and not a watercraft. The claim is made that the houseboat being drawn up on the beach, as it was at the time the crime was committed, could not properly be called a watercraft, but should have been called a dwelling house or other building. It is undisputed that the structure where the crime is charged to have been committed had been built as a houseboat and was in the form of one, but was at the time drawn up on the sandbar or sandy beach on an island in the Mississippi river. There is nothing in this record to indicate that it was placed there so as to remain permanently. On the contrary, all the evidence tends to show that it was only placed there temporarily, to remain during the spring and summer months, while the owner was looking after his chickens and his small garden. No blocks were placed under it to hold it there, and there was nothing permanent, so far as the evidence shows, attaching it to the ground. It is apparent that if the water of the Mississippi river had risen, as it frequently does, it would have caused the boat to float. Whether it was so drawn up with the intention of ever being put again to its original use as a watercraft, or was only there temporarily, until the inclination of the owner or the rise of the water caused him to use it for transportation on the river, does not appear positively from the record. But be this as it may, no term other than "houseboat" would so clearly have described the place where the crime is charged to have been committed. Variances are regarded as material in criminal cases when they mislead the defendant in making his defense and expose him to the danger of being again put in jeopardy for the same offense. (*Clark* v. *People,* 224 Ill. 554.) The office of the indictment was properly filled in this instance in apprising the plaintiff in error, in plain terms, where the crime was charged to have been committed. We fail to see how he could possibly have misunderstood this term or have understood another better. The place of the crime was properly described in the indictment as a houseboat.

It is further contended that before the court pronounced sentence it should have adjudged plaintiff in error guilty of the crime, and that the case should be reversed because this was not done. Substantially the same form of sentence as is found in this record was pronounced in *Hoch* v. *People*, 219 Ill. 265. What was said in that case fully answers this objection. The sentence in this case was legal and binding.

Finding no reversible error in the record the judgment of the circuit court is affirmed.        *Judgment affirmed.*