COMMONWEALTH vs. ALBERT S. MADDOCKS.

Essex.    November 1, 1910. — December 5, 1910.

Present: KNOWLTON, C. J., HAMMOND, LORING, SHELDON, & RUGG, JJ.

*Intoxicating Liquors. Evidence*, Of reputation, Presumptions and burden of proof. *Practice, Criminal*, Conduct of trial, Judge's charge.

At the trial of a complaint against a retail druggist, licensed as a pharmacist, for keeping and maintaining a tenement used by him for the illegal sale and the illegal keeping of intoxicating liquors, there was evidence that on a certain day a quantity of liquors was seized in the cellar of the shop of the defendant, and that there were found in the cellar six or seven bottles of ale with straw cover-

ings upon them and near them on the floor seventy-five or more similar straw coverings without bottles in them. There also was evidence of a sale by the defendant on the same day of half a pint of gin without a physician's prescription. *Held,* that the evidence warranted a finding that one of the purposes for which the defendant kept his shop was to sell intoxicating liquors there illegally, and required the submission of the case to the jury.

At the trial of a complaint for keeping and maintaining a tenement used for the illegal sale and the illegal keeping of intoxicating liquors, where the defendant has introduced evidence that his reputation in the community as to his general character is good, it cannot be said to be error for the presiding judge to allow the Commonwealth to show in rebuttal that the defendant's reputation as to being a law-abiding person in relation to the liquor law is bad; although, if such evidence is allowed to be introduced, the presiding judge must exercise great care to see that the jury do not make use of it as tending to show guilt, but use it merely to meet and nullify, so far as it may have any effect, the evidence of the defendant's good reputation.

At the trial of a complaint for keeping and maintaining a tenement for the illegal sale and the illegal keeping of intoxicating liquors, the counsel for the defendant put in evidence, without objection, the facts that the defendant had lived in the community for thirty years with no complaint ever having been made against him, and that he had a wife and three children. The counsel for the defendant, in his argument to the jury, said, " that he desired to impress upon the jury their responsibility and ask them to take into consideration the fact that this defendant had been in the community for many years with no stain upon his character, that he had a family that would be deeply affected by the outcome of this trial, that the defendant was not saying this by way of begging for mercy but simply to impress upon them the seriousness of the charge, of the probable effect upon the defendant and his family, so that they should realize their responsibility and weigh with the most extreme care the evidence as submitted against the defendant to see whether or not it bore the impress of truth and required them to find the defendant guilty beyond any reasonable doubt." The presiding judge in his charge to the jury instructed them " that any remarks made by the defendant's counsel in regard to the wife and family of the defendant were improper, that it made no difference whether he was a man of standing, whether he had a wife or family or not, that the defendant had no right to argue this proposition to the jury, that the remarks were intended by the counsel for the defendant simply to throw dust in the eyes of the jury and divert their minds from the proper issue in the case." *Held,* that the statement of the judge quoted above in regard to the intention of the defendant's counsel was unwarranted and was prejudicial to the defendant, and that an exception to it must be sustained.

At the trial of a complaint for keeping and maintaining a tenement used for the illegal sale and the illegal keeping of intoxicating liquors, the instructions of the presiding judge to the jury in regard to the burden of proof were very meagre, and the defendant asked the judge to give to the jury the additional instructions, " that they must give the benefit of any reasonable doubt to the defendant, that a greater degree of certainty was required to convict the defendant of a criminal charge than might satisfy the jury in their ordinary business affairs and that if evidence could be explained reasonably upon any other hypothesis than that of the defendant's guilt the jury should find the defendant not guilty." *Held,* that the additional instructions asked for by the defendant embodied correct statements of the law and should have been given.

COMPLAINT, received and sworn to in the District Court of Eastern Essex on November 26, 1909, charging the defendant with keeping and maintaining a tenement in Gloucester used by him for the illegal sale and the illegal keeping of intoxicating liquors between May 1 and November 26, 1909.

At the trial in the Superior Court before *Raymond*, J., it appeared that the defendant was a retail druggist at Gloucester, licensed as a pharmacist and holding a certificate of fitness, issued under the statute on the subject, authorizing him to sell intoxicating liquors on physicians' prescriptions. The premises consisted of a store and a cellar underneath, the store being an ordinary drug store and equipped as such.

The Commonwealth introduced evidence by two detectives, who testified that the defendant sold to them on the twenty-fifth day of November one half pint of gin without a physician's prescription. There also was evidence from the police officers of the city of Gloucester, who testified as to the seizure of a quantity of liquors from the premises of the defendant on November 25. It was contended by the Commonwealth that the quantity of liquors on the premises was excessive. There also was evidence that there were found in the cellar six or seven bottles of Bass's ale with straw coverings upon them and that there were near by on the floor of the cellar seventy-five or more similar straw coverings. The defendant testified and introduced evidence tending to prove that he did not sell the one half pint of gin to the detectives, that the quantity of liquors seized was not an excessive quantity but was a reasonable and proper quantity to be kept by him, considering the size of the city and the extent of his trade and the number of prescriptions which he was called upon to fill; that the bottles in the cellar were not covered with straw coverings and that the other straw in the cellar was from bottles of Apollinaris water and Poland Spring water and packings of other liquids which he had received in the ordinary course of business.

At the close of the evidence the defendant asked the judge to rule that upon all the evidence the jury could not find the defendant guilty and asked the judge to order a verdict of not guilty. The judge refused to make this ruling or to order such a verdict, and the defendant excepted.

During the trial of the case the defendant introduced the evidence of several witnesses who testified that the reputation of the defendant in the community as to his general character was good. John Karcher, one of the witnesses who so testified, was asked upon cross-examination by the district attorney as to the reputation of the defendant in the community in regard to the sale of intoxicating liquors. To this question the defendant objected. The judge overruled the objection and the defendant excepted. The witness then answered, " I don't know."

The Commonwealth then called to the stand the county treasurer, David I. Robinson of Gloucester, and asked him the following question: "Do you know what is the reputation of the defendant in the community as to his being a law-abiding person in relation to the liquor law?" To this question the defendant objected. The judge overruled the objection and the defendant excepted. The witness then answered, " I do." The district attorney then asked, " What is it?" To this question the witness answered, " It is bad." To this question and answer the defendant also objected. The judge overruled the objection and the defendant excepted.

It appeared in the evidence produced by the defendant during the trial, without objection, that the defendant had been in the community for thirty years with no complaint ever having been made against him and no objection having been made to his having a druggist's license or a certificate of fitness during all these years, and that he had a wife and three children in Gloucester. The counsel for the defendant argued to the jury " in substance that this was a most important case for the defendant, that the jury should realize in this case as in every other criminal case that the evidence must convince them of the guilt of the defendant beyond any reasonable doubt, that he desired to impress upon the jury their responsibility and ask them to take into consideration the fact that this defendant had been in the community for many years with no stain upon his character, that he had a family that would be deeply affected by the outcome of this trial, that the defendant was not saying this by way of begging for mercy but simply to impress upon them the seriousness of the charge, of the probable effect upon the defendant and his family, so that they should realize their responsibility and weigh

with the most extreme care the evidence as submitted against the defendant to see whether or not it bore the impress of truth and required them to find the defendant guilty beyond any reasonable doubt, that the same rule of evidence as to proof beyond a reasonable doubt applied in this case as it would even in a case where murder was charged and that the Commonwealth was held up to the same degree of certainty as it would be if the charge was the gravest possible charge in a criminal case."

The judge in his charge to the jury stated to them "that any remarks made by the defendant's counsel in regard to the wife and family of the defendant were improper, that it made no difference whether he was a man of standing, whether he had a wife or family or not, that the defendant had no right to argue this proposition to the jury, that the remarks were intended by the counsel for the defendant simply to throw dust in the eyes of the jury and divert their minds from the proper issue in the case, that the court hoped that the jury would be acute enough to appreciate the purpose of the argument and would consider only such matters as should properly influence their decision."

To these instructions of the judge the defendant objected and asked the judge to modify or correct them.    The defendant excepted to these instructions and to the refusal of the judge to amend them.

The judge in his charge to the jury instructed them as to the definition of reasonable doubt substantially as follows : " Of course it is impossible that any case can be proved with mathematical precision or certainty, there is always a balancing of facts upon one side or the other in arriving at a reasonable conclusion upon all the evidence.    When the court says that the evidence must satisfy the jury beyond a reasonable doubt as to the guilt of the defendant, it simply means that the jury must be satisfied of his guilt only to that degree of certainty upon which they would be satisfied to act in important concerns of their own."

To this instruction the defendant objected and asked the judge to instruct the jury " that they must give the benefit of any reasonable doubt to the defendant, that a greater degree of certainty was required to convict the defendant of a criminal charge than might satisfy the jury in their ordinary business affairs and that

if evidence could be explained reasonably upon any other hypo-thesis than that of the defendant's guilt the jury should find the defendant not guilty."

This ruling or explanation the judge refused to make, stating that he had so frequently explained reasonable doubt to the jury that there was no need to do it again. To the instruction of the judge and to his refusal to amend and explain it the defendant excepted.

The jury returned a verdict of guilty; and the defendant alleged exceptions.

*F. H. Tarr*, for the defendant.

*H. C. Attwill*, Assistant District Attorney, for the Common-wealth.

SHELDON, J.　1. There was evidence which required the sub-mission of the case to the jury. They might infer that the cov-erings discovered in the defendant's cellar had come from bottles with the same contents as those found in the immediate vicinity which were furnished with similar coverings. The quantity of liquors actually upon his premises, with what might thus be found to have been recently disposed of by him, and the fact which also might be found that on the same day he had made an illegal sale of liquor, warranted the inference that one of the purposes for which he kept his shop was to sell illegally intoxi-cating liquors therein. *Commonwealth* v. *Locke*, 145 Mass. 401. *Commonwealth* v. *McNeff*, 145 Mass. 406. There is nothing in *Commonwealth* v. *Patterson*, 138 Mass. 498, or *Commonwealth* v. *Hayes*, 150 Mass. 506, inconsistent with this.

2. We cannot say that after the defendant had put his gen-eral reputation in issue, the Commonwealth might not show in reply that his reputation as to being a law-abiding person in re-lation to the liquor law was bad, although we intimate no opin-ion as to the particular question which was excepted to. The introduction of such evidence would of course call for great care on the part of the judge to see that the jury should not use it as evidence of guilt, but should treat it merely as meeting and nul-lifying (so far as it might have any effect) the evidence of the defendant's good reputation. But it was not incompetent. It was so held in *State* v. *Knapp*, 45 N. H. 148, 157, *Balkum* v. *State*, 115 Ala. 117, and *State* v. *Thornhill*, 174 Mo. 364. See

the discussion in 1 Wigmore on Ev. §§ 59 *et seq.* The testimony excluded in *Commonwealth* v. *Nagle,* 157 Mass. 554, 555, was as to the defendant's habits and course of action, not as to his reputation itself.

3. It would be difficult to say that the argument addressed to the jury by the defendant's counsel was objectionable. *Commonwealth* v. *Brownell,* 145 Mass. 319, 323. If, in spite of the disclaimer made, it seemed to the presiding judge that there was an effort to appeal unduly to the sympathy of the jury or to divert their attention from the issue, it would be right in charging them to guard against that danger. But it was going altogether too far and was distinctively prejudicial to the defendant to tell the jury that " the remarks were intended by the counsel for the defendant simply to throw dust in the eyes of the jury and divert their minds from the proper issue in the case."

4. It might be possible, if there had been no request for further instructions, to sustain the, ruling that the requirement of proof of guilt beyond a reasonable doubt is satisfied by proof to that degree of certainty upon which a jury would act in important concerns of their own. This however falls considerably below the statements which were sustained in *Commonwealth* v. *Leach,* 160 Mass. 542, 546, 551, now relied on by the Commonwealth. And see *Commonwealth* v. *Sinclair,* 195 Mass. 100, 110. But the instructions given were very meagre ; and it requires no reasoning and no citation of authorities to show that the additional instructions asked for by the defendant upon this point embodied correct statements of the law and should have been given.

*Exceptions sustained.*