COMMONWEALTH vs. WILLIE F. SMITH.

Hampden. April 7, 1980. — July 15, 1980.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, WILKINS, & ABRAMS, JJ.

*Practice, Criminal,* New trial, Instructions to jury.

At a criminal trial, the judge's instructions with respect to reasonable doubt were based on traditional and acceptable language, properly informed the jury of the Commonwealth's burden of proof, and did not so trivialize the concept of proof beyond a reasonable doubt as to require reversal of the conviction even though the judge inappropriately used specific examples of important decisions in the personal lives of the jurors in explaining proof beyond a reasonable doubt. [143-146]

MOTION for a new trial filed in the Superior Court Department on June 21, 1979.

The proceeding was heard by *Moriarty,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*John F. Donahue* for the defendant.

*John T. McDonough,* Assistant District Attorney, for the Commonwealth.

HENNESSEY, C.J. The defendant, Willie F. Smith, was tried to a jury, along with two codefendants, for the murder of one Edward Shaw in Springfield on June 11, 1972. On February 17, 1973, the jury returned a verdict of guilty of murder in the second degree against the defendant, and he was sentenced to life imprisonment. On February 21, 1973, the defendant filed a motion for a new trial and a claim of appeal. The appeal was not perfected and was later dismissed. The motion for a new trial was denied on June 17, 1974, by the trial judge.

On June 21, 1979, the defendant filed a second motion for a new trial. The trial judge, after a hearing, denied this

motion on August 21, 1979, and it is this denial which is the subject of this appeal. In the absence of constitutional error, the granting of a motion for a new trial is addressed to the sound discretion of the trial judge. *Commonwealth* v. *Horton*, 376 Mass. 380, 401 (1978). The defendant asserts that there was constitutional error in the judge's instructions to the jury. We conclude that there was no error.

The homicide occurred at the R & P Restaurant in Springfield on June 11, 1972. The Commonwealth offered as its principal witness Mrs. Esther Shaw. The victim Edward Shaw was the brother-in-law of Mrs. Shaw. Mrs. Shaw and her husband Henry owned the restaurant. They were working at the restaurant, along with Edward Shaw and John Carroll, at the time of the shooting. Mrs. Shaw testified that at approximately 10 P.M. on June 11, 1972, Willie F. Smith entered the kitchen of the R & P Restaurant. Shortly after this, Hubert Bonds and Willie J. Scott also walked into the kitchen.

Mrs. Shaw testified that a conversation took place between her and Smith while they were in the kitchen. Scott then pulled out a gun. Both Smith and Bonds also pulled out guns. Henry Shaw then left the kitchen, and as he was leaving he handed a gun to Edward Shaw, who was entering the kitchen.

Mrs. Shaw testified that Bonds then shot at Edward Shaw, and Shaw fell to the floor. Furthermore, she testified that after the first shot, Smith said to Bond: "Kill that son-of-a-bitch." Bonds walked over to Edward Shaw and shot him once again. Bonds, Smith, and Scott then left the restaurant. Mrs. Shaw picked up the gun which was at Edward Shaw's side. Mrs. Shaw fired a shot into the area above the kitchen door. She then ran into the street where she fired the gun until it was empty.

Bonds testified before the jury that he went to the R & P Restaurant on June 11, 1972, along with Smith and Scott, in order to buy liquor. Bonds stated that while he was in the kitchen purchasing liquor, Edward Shaw pointed a gun at Bonds and fired it twice. Bonds stated that he fired his gun in return.

Smith testified before the jury that he was not in the kitchen at the time of the shooting. Furthermore, Smith stated that when the shooting started, he left the restaurant by way of the front door. Smith testified that he was joined outside by Bonds and Scott, and the three men drove away in Scott's car. Bonds was driven to the Wesson Memorial Hospital where he was treated for a gunshot wound to the left arm. A ballistics expert testified for the Commonwealth that in his opinion the spent projectile removed from Bonds' left arm was fired from Bonds' gun.

The single contention of Smith is that, in the charge to the jury as to reasonable doubt, the judge drew an analogy between proof beyond a reasonable doubt and the making of important decisions in the personal lives of the jurors.[1]

---

[1] The complete instructions of the judge in the instant case, as to reasonable doubt, were as follows:

"But the presumption of innocence also means something more than that. The presumption of innocence means that no defendant in a criminal case has the obligation to prove his or her innocence. On the contrary. Commonwealth has the burden of proving their guilt and of proving it beyond a reasonable doubt. And every defendant has a right, an absolute right, in a criminal case to simply come into Court and say to the charge 'not guilty.' And then say to the Commonwealth 'You prove it,' and sit and say nothing more, and the obligation is the Commonwealth's to prove the charge and to prove it beyond a reasonable doubt. And if the Commonwealth fails to meet that burden, the defendant is entitled to a verdict of not guilty.

"Now, what do we mean when we speak of proof beyond a reasonable doubt. Reasonable doubt has been defined in numerous ways. It has been said, for example, that a reasonable doubt means such doubt as remains in the mind of a reasonable man or woman who is earnestly seeking the truth. It has been said sometimes that a reasonable doubt is a doubt for which a good reason can be given. But the most common definition of proof beyond a reasonable doubt, and reference has been made to it, is that a proof beyond a reasonable doubt means proof to a moral certainty. And a juror may be said to be morally certain when he is so fully convinced that he would act on his own conviction in matters of the highest importance concerning his own affairs. Anything short of such conviction would mean that the Commonwealth has not proved the offense beyond a reasonable doubt.

"But proof beyond a reasonable doubt does not mean proof beyond all doubt, nor beyond an imaginary doubt, or beyond a doubt without reason. It does not mean such doubt as might exist in the mind of a person

Further, he maintains that the judge erroneously included specific examples of these personal decisions. Smith relies principally upon *Commonwealth* v. *Ferreira,* 373 Mass. 116 (1977), where we reversed a judgment of conviction and ordered a new trial for the defendant upon the reasoning, inter alia, that specific examples were recited in the jury instructions which, "far from emphasizing the seriousness of the decision before [the jurors], detracted both from the seriousness of the decision and the Commonwealth's burden of proof." *Id.* at 129.

It is true that jury instructions on proof beyond a reasonable doubt which include examples of decisions in the jurors' own experience may be so inadequate as to be con-

---

earnestly seeking for doubt nor an excuse to acquit a defendant. Proof beyond a reasonable doubt, in other words, does not mean absolute proof or proof to a mathematical certainty, if there is such a thing. But rather proof that convinces you as reasonable people earnestly seeking the truth that the defendant is guilty. But if when all is said and done, after considering all of the evidence, there remains in the mind of the juror any reasonable doubt of the existence of any fact which is essential to the guilt of a defendant on a particular charge, then the duty of the jury is to resolve that doubt in favor of the defendant and to find him not guilty.

"Now, I said a moment ago that proof beyond a reasonable doubt means proof to a moral certainty, and that a juror may be said to be convinced to a moral certainty when he would act on his convictions in matters of highest importance concerning his own affairs. I think it is useful to give some illustrations or examples of what we mean by that.

"All of you had at one time or another in the course of your lifetime have had to make major decisions. The decision, for example, to marry or not to marry; the decision perhaps to buy a home or not to buy a home; the decision to change jobs after having held one job for a long period of time; and perhaps some of you have made the decision to retire or not to retire. These are major decisions that one has to make in the course of a lifetime. Not the everyday decision, what I am going to have for lunch today or what I am going to watch on television tonight. But major decisions. You have had to make them and you had. You married or you didn't marry. You bought the house or did not buy the house. You changed jobs or you didn't change jobs. You retired or you didn't retire. You are not always one hundred per cent sure that you were making the right decision, but you made it. You were sufficiently convinced it was the right decision to make, so you took that path. You were convinced to a moral certainty, and this is the type of conviction that we speak of when we speak of proof beyond a reasonable doubt."

stitutional error. This was so in *Commonwealth* v. *Garcia,* 379 Mass. 422, 440-441 (1980).[2] Although the trial of the instant case occurred about four years before the *Ferreira* decision, it is also true, contrary to the Commonwealth's argument, that we have held that our decision in *Ferreira* is to have retroactive effect. *Commonwealth* v. *Garcia, supra* at 441 (1980), citing *In re Winship,* 397 U.S. 358 (1970), made retroactive *Ivan V.* v. *New York,* 407 U.S. 203 (1972). However, we have never held nor do we now hold, that the use of specific examples necessarily imports error, constitutional or otherwise.

The Commonwealth argues, first of all, that if there was error in the charge, the evidence of Smith's guilt was so substantial that, beyond a reasonable doubt, the error could not have contributed to the guilty verdict, and that it was therefore harmless. Cf. *Commonwealth* v. *Garcia, supra* at 441-442. We need not pursue this argument further because we conclude, after examining the charge in its entirety, that there was no error.

We have repeatedly said that to determine whether a definition of reasonable doubt accurately conveys the meaning of the term, it is necessary to consider the charge as a whole. *Commonwealth* v. *Watkins,* 377 Mass. 385, 388, cert. denied, 442 U.S. 932 (1979). *Commonwealth* v. *Grace,* 376 Mass. 499, 500-501 (1978), denial of habeas corpus aff'd sub nom. *Grace* v. *Butterworth,* No. 79-1422 (1st Cir. Feb. 5, 1980), on rehearing, 635 F.2d 1 (1st Cir. 1980). *Commonwealth* v. *Gilday,* 367 Mass. 474, 497-498 (1975). *Commonwealth* v. *Bumpus,* 362 Mass. 672, 682 (1972), judgment vacated and remanded on other grounds, 411 U.S. 945 (1973), aff'd on rehearing, 365 Mass. 66 (1974), reviewed on petition for habeas corpus, sub nom. *Bumpus* v. *Gunter,* 452 F. Supp. 1060 (D. Mass. 1978). Upon such examination, in some cases, we have found no error despite the use

---

[2] Compare the instructions as to reasonable doubt in *Garcia* as reproduced in their entirety in 379 Mass. at 438-439 (1980), with the instructions in the instant case, *supra* at n.1 of this opinion.

of examples of major decisions made in the lifetimes of the jurors. *Commonwealth* v. *Grace, supra* at 500-501. *Commonwealth* v. *Coleman,* 366 Mass. 705, 712 (1975). *Commonwealth* v. *Ferguson,* 365 Mass. 1, 12 (1974). *Commonwealth* v. *Cresta,* 3 Mass. App. Ct. 560, 565-566 (1975).

Taken as a whole, the instructions in this case were based on traditional and acceptable language, and properly informed the jury of the burden of proof incumbent upon the Commonwealth. There was emphasis on moral certainty as a definition of the Commonwealth's burden, in language substantially similar to instructions which we have approved in the past. *Commonwealth* v. *Webster,* 5 Cush. 295, 320 (1850). *Commonwealth* v. *Seay,* 376 Mass. 735, 745-746 (1978). *Commonwealth* v. *Grace, supra* at 500-501 (1978). There was other acceptable and appropriate language of definition. In these respects the instructions here were unlike those in the *Ferreira* and *Garcia* cases, *supra,* where the specific examples constituted virtually the entire instructions defining proof beyond a reasonable doubt and the Commonwealth's related burden of proof. Although we emphasize once more that the use of such examples in instructing the jury is inappropriate, we think the charge here has the saving features of the *Ferguson, Coleman,* and *Grace* cases. See *Commonwealth* v. *Ferreira,* 373 Mass. 116, 129 (1977). Consequently, unlike *Ferreira* and *Garcia,* the charge here did not so trivialize the concept of proof beyond a reasonable doubt as to require reversal of the conviction.

"An appeal of a motion for a new trial is not an occasion for our consideration of the case under G. L. c. 278, § 33E." *Commonwealth* v. *Nolin,* 373 Mass. 45, 52 (1977). Further, our function under G. L. c. 278, § 33E, has been limited by c. 346, § 2, of St. 1979, which took effect after the murder and the trial but before this appeal. However, we have already decided that the old version of § 33E is applicable to an appeal where the offense resulting in a second degree murder conviction upon an indictment in the first degree was committed before July 1, 1979. *Common-*

*wealth* v. *Davis,* 380 Mass. 1, 12-17 (1980). See *Commonwealth* v. *Hodge (No. 2),* 380 Mass. 858, 867 (1980). Therefore we have reviewed the law and the entire record in the usual manner. We find nothing which calls for the exercise of our extraordinary power to order a new trial or reduce the verdict in the instant case.

*Order denying motion for a
new trial affirmed.*