COMMONWEALTH *vs.* RALPH P. RICHARDS.

Plymouth. March 2, 1981. — August 20, 1981.

Present: HENNESSEY, C.J., BRAUCHER, WILKINS, LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Malice. Self-Defense. Homicide. Practice, Criminal,* Instructions to jury.

At a murder trial in which the only issue in dispute was the presence or absence of malice, the judge's instructions to the jury referring to a presumption of malice coupled with expressions such as "unless rebutted," or "accounted for," or "disproved" constituted prejudicial error. [399-404] NOLAN, J., with whom BRAUCHER and LYNCH, JJ., join, dissenting.

At a murder trial the judge erred in instructing the jury on self-defense in terms which left it to the jury to accept wholly or to reject wholly self-defense as an excuse for the killing, without leaving open the possibility that the defendant used excessive force in self-defense, and in stating that in order to acquit the jury would need to "find" that the defendant acted in self-defense. [404-405] NOLAN, J., with whom BRAUCHER and LYNCH, JJ., join, dissenting.

At a murder trial it was not error for the judge to deny the defendant's motion for directed verdicts of acquittal to so much of the indictment as alleged murder in the first degree and in the second degree where there was evidence from which the jury could find that the defendant got out of his automobile, approached some men in a parking lot armed with a gun, and shot one of the men with intent to inflict serious injury. [406]

INDICTMENT found and returned in the Superior Court on May 8, 1970.

The case was tried before *Leen,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*Daniel L. Callahan* for the defendant.

*Robert M. Payton,* Assistant District Attorney, for the Commonwealth.

ABRAMS, J.   In 1970, the defendant was convicted of murder in the second degree on an indictment charging him with murder in the first degree in the death of Robert Nute.[1] The case is here on the defendant's appeal pursuant to G. L. c. 278, §§ 33A-33G.[2]   Richards alleges that (1) the judge's instructions to the jury effectively precluded a reasonable juror from returning a verdict of manslaughter or acquittal by reason of self-defense rather than murder, and (2) the judge's failure to direct a finding of not guilty on so much of the indictment as charged murder in the second degree was error since there was insufficient evidence of malice aforethought.[3]   We conclude that there was no error with respect to the denial of the defendant's motion for a required finding, but we believe that the jury instructions, read as a whole, created a danger of grave prejudice or a substantial likelihood that a miscarriage of justice had occurred, and therefore, pursuant to our § 33E power, we reverse and order a new trial.

---

[1] The defendant was also indicted and convicted on a charge of unlawful possession of a firearm.  This conviction was placed on file, and the defendant argues no error with respect to that conviction.  Thus, there is no issue before us as to this conviction.  *Commonwealth* v. *Delgado*, 367 Mass. 432, 438 (1975).

[2] The defendant's original appeal was dismissed by the Appeals Court when the defendant failed to return to prison following a furlough.  *Commonwealth* v. *Richards*, 1 Mass. App. Ct. 821 (1973).  Having been returned to custody and represented by new counsel, the defendant moved in the Appeals Court for reconsideration of the order dismissing his appeal, and on October 9, 1980, that court ordered the appeal restored to the appellate docket.  *Commonwealth* v. *Richards*, 10 Mass. App. Ct. 911 (1980).  We transferred the case here on our own motion, since the offense resulting in the conviction of murder in the second degree occurred prior to July 1, 1979.  See *Commonwealth* v. *Davis*, 380 Mass. 1, 15 (1980).

[3] Richards correctly raises no issue with respect to the sufficiency of the evidence of murder in the first degree, since he was acquitted of that charge.  See *Commonwealth* v. *Medina*, 380 Mass. 565, 574 (1980); *Commonwealth* v. *Amazeen*, 375 Mass. 73, 81 n.6 (1978).

We summarize only the facts relevant to the issues before us on appeal. The government produced evidence that on the night of February 14, 1970, the defendant was present with his wife, her brother, and his wife, at Frankie Lane's bar in Hanson. Robert Nute was also present at the bar. With him were his brother, Jimmy Nute, and two friends. After the bar closed, the defendant and his companions left the bar and entered their automobile, which was parked in the bar's parking lot. As Robert Nute and a companion entered the parking lot, the defendant got out of the automobile and shot at the men, fatally wounding Nute.

The defense indicated that Robert Nute and his companion were approaching the defendant's automobile when the defendant got out of the automobile. A fight broke out between the men, and, in the course of the fight, Nute was shot. There was some evidence that the defendant was heard telling Nute and his companion to "[l]eave us alone, we're not doing anything." On the basis of the evidence, the judge instructed the jury on the crimes of murder in the first degree, murder in the second degree, and voluntary manslaughter,[4] as well as on self-defense.

*Instructions to the jury.* The defendant asks us to use our power pursuant to § 33E to grant him a new trial because he claims the instructions may well have precluded a reasonable juror from considering manslaughter or acquittal by reason of self-defense as possible verdicts. *Sandstrom* v. *Montana*, 442 U.S. 510 (1979). See *Mullaney* v. *Wilbur*, 421 U.S. 684 (1975); *Commonwealth* v. *McInerney*, 373 Mass. 136 (1977); *Commonwealth* v. *Rodriguez*, 370 Mass. 684 (1976).

Although the defendant did not take exception to any of the instructions at trial, "G. L. c. 278, § 33E . . . operates

---

[4] Neither at trial nor on appeal did the defendant claim that the judge should have instructed on involuntary manslaughter. "An 'appellate court need not pass upon questions or issues not argued in the brief.'" *Commonwealth* v. *Cundriff*, 382 Mass. 137, 150 n.22 (1980), quoting from Mass R. A. P. 16(a)(4), as amended, 367 Mass. 919 (1975).

as a type of 'safety valve' by ensuring review as to all aspects of the cases regardless of the absence of claim of error." *Commonwealth* v. *Brown*, 376 Mass. 156, 168 (1978). "The broad scope of the review which this court is required to make under G. L. c. 278, § 33E, in a capital case is not limited to questions based on exceptions saved during the course of the trial." *Commonwealth* v. *Hall*, 369 Mass. 715, 736 (1976). "It is also settled that, in any case tried before our decision in *Commonwealth* v. *Rodriguez, supra*, 'this court will review the constitutional adequacy of the instructions to the jury as to the burden of proof . . . where the evidence adequately raises the issues of self-defense or provocation, even though the defendant addressed no objections or exceptions to that issue.'" *Commonwealth* v. *Fitzgerald*, 380 Mass. 840, 842 (1980), quoting from *Commonwealth* v. *Collins*, 374 Mass. 596, 599 (1978).[5]

The defendant does not dispute the fact that the judge instructed the jury that the Commonwealth has the burden of proving each element of the crime charged beyond a reasonable doubt. Rather, he claims that this instruction was, in effect, negated by the judge's instructions on malice, the main disputed issue at trial. Richards claims that the malice instructions raise "serious questions about the accuracy of [the] guilty verdicts." *Commonwealth* v. *Stokes*, 374 Mass. 583, 589 (1978), quoting from *Hankerson* v. *North Carolina*, 432 U.S. 233, 241 (1977). See *Sandstrom* v. *Montana*, 442 U.S. 510 (1979); *DeJoinville* v. *Commonwealth*, 381 Mass. 246 (1980); *Connolly* v. *Commonwealth*, 377 Mass. 527 (1979). We view the instructions, in their entirety, to determine the "probable impact, appraised realisti-

---

[5] We have also examined instructions, in the absence of an objection, where the "constitutional significance [of the claim] was not established until after the petitioner's trial and appeal." *DeJoinville* v. *Commonwealth*, 381 Mass. 246, 248 (1980), quoting from *LeBlanc* v. *Commonwealth*, 363 Mass. 171, 173-174 (1973). See *Lannon* v. *Commonwealth*, 379 Mass. 786, 787-788 (1980).

cally . . . upon the jury's factfinding function." *United States* v. *Wharton,* 433 F.2d 451, 457 (D.C. Cir. 1970).

In the instructions on malice,[6] the judge told the jurors that "a person must be presumed to intend to do that which

---

[6] Pertinent parts of the malice instructions follow: "So that the character of the distinction between murder and manslaughter is malice. Therefore, if an unlawful killing is proved as a fact in any case, all of the circumstances preceding or attending the killing that relate to it must be inquired into by the jury in order to determine whether a killing is murder or manslaughter.

"If a killing follows from a natural intent to kill, malice aforethought is implied. And unless the circumstances are such as to reduce the crime to manslaughter, the crime is murder. A killing may be with malice and consequently murder, even though the assailant did not intend to cause the death of the victim. For example, if one assaults another intentionally and knowingly with a degree of force that will probably do grievous bodily harm to the victim and will according to human experience create a plain likelihood that the victim will die as a consequence of the violence used, and death does in fact follow from such violence, the act is malicious within the meaning of the law, when there are no extenuating circumstances, even though death was not contemplated, and although the assailant wished or hoped that death would not result.

"And this rule is founded on the plain and obvious principle that a person must be presumed to intend to do that which he voluntarily and willfully does, and that he must intend all the natural, probable and usual consequences of his acts.

"On the other hand, if the death of a victim though intended was inflicted immediately after provocation given by the deceased, which provocation the law deems adequate to excite sudden and angry passion and heat of blood, the fact of malice is then rebutted, but the homicide being unlawful is manslaughter.

"So, you will have in mind that the distinguishing feature between the murder and manslaughter is the presence or absence of malice, not the presence or absence of an actual intent to kill.

"In connection with the crime of voluntary manslaughter, it is to be noted that not every provocation exciting sudden and angry passion and creating heat of blood rebuts malice. Passion without adequate provocation is not enough. . . . To reduce the killing to manslaughter, from the crime of murder, the assault must have been with violence or great rudeness, and must have been reasonably calculated to excite passion and heat of blood. The killing must be accounted for by actions which manifest the frailty and infirmities of human nature when excited to passion, rather than the depravity of cruelty or malice. . . ."

"Whenever a homicide is shown to have been committed without justification and as a result of a deliberate act, it is sufficiently proved to have been done with malice aforethought; and malice on such a case is not dis-

he voluntarily and willfully does, and that he must intend all the natural, probable and usual consequences of his acts," and that "if one assaults another intentionally and knowingly with . . . [deadly force], the act is malicious within the meaning of the law." He further instructed the jurors that "[i]f a killing follows from a natural intent to kill, malice aforethought is implied, [and] *unless* the circumstances are such as to reduce the crime to manslaughter, the crime is murder." The judge also told the jurors that malice could be *rebutted* by adequate provocation; that to reduce the killing to manslaughter "the killing must be *accounted for by actions* which . . . excited to passion, rather than the cruelty of malice"; that malice "is not *disproved* by showing that the accused had no personal ill will against the victim"; that if the jurors found there was no malice in the killing and that there was adequate provocation they "would be warranted in finding it [provocation] was sufficient to *reduce* the crime of murder to the crime of manslaughter."

After four hours of deliberation, the jury came back with questions, asking for "[c]larification of second degree murder," "[c]larification on voluntary manslaughter," and "[l]egal definition of malice." In the supplementary instructions,[7] the jurors were told again that "if a killing fol-

---

proved by showing that the accused had no personal ill will against the victim, but killed the victim from some other motive, whatever that motive may be."

[7] In his supplementary instructions the judge charged in part:

"Murder is the unlawful killing of a human being by another with malice aforethought; while manslaughter is the unlawful killing of another without malice, but in a sudden passion of heat of blood, caused by a reasonable provocation declared adequate by law.

"It follows that the characteristic distinction between murder and manslaughter is malice, that is, the presence or absence of malice.

"So that if an unlawful killing is disclosed or proved to your reasonable satisfaction or beyond a reasonable doubt, then you inquire into the various circumstances preceding or attending the killing, in order to determine whether the killing is murder or manslaughter.

"Now, if a killing follows from an actual intent to kill, malice aforethought is implied, and unless the circumstances are such as to reduce the

lows from an actual intent to kill, malice aforethought is implied, and *unless* the circumstances are such as to reduce the crime to manslaughter then the crime is murder." The jurors were reinstructed that "[t]o constitute manslaughter the *killing must be accounted for* by actions which manifest the frailties and infirmities of human nature."

The language of the instructions as a whole raises questions about the integrity of the jury's implicit finding of malice aforethought. In context, the only reasonable inference a juror could draw from the instructions as a whole was that it was the defendant who had to disprove malice. None of the instructions indicated to the jurors that the use of the gun did not make the finding of malice aforethought man-

---

crime to manslaughter then the crime is murder.

"So that you examine the evidence, consider the evidence to determine whether or not there is what the law has determined to be adequate provocation to reduce the crime from murder to manslaughter. . . .

"To constitute manslaughter, the killing must be accounted for by actions which manifest the frailties and infirmities of human nature when incited to passion rather than the depravity of cruelty of malice.

". . . .

"Now, manslaughter, as I say, it's an unlawful killing of a human being, and it's without malice, committed when a human being has killed unlawfully in sudden heat of passion that is caused by adequate provocation. The government must show that the defendant inflicted an injury or injuries upon the deceased, from which the deceased died; that the defendant so injured the deceased in the heat of passion that the heat of passion was caused by adequate provocation, and that the homicide was committed without legal justification. In order for it to be manslaughter it has to be without malice, as I tried to define malice for you.

". . . .

"So, that is the definition of malice and what malice means in the law. And it is for you to determine whether or not, assuming you find the defendant fired the shot that caused the death of the deceased here, whether that act was attended with malice as I explained it to you or not. If it were attended with malice, then it is murder. If it were not attended with malice, if you find there was adequate provocation, as I have explained that expression to you, if you find that there is, then that reduces the crime from murder to manslaughter.

"In both cases there is an actual intent to kill. In one case there is malice; in the other case the presumption of malice that flows from an unlawful act is rebutted or overcome by the provocation, the heat of passion, caused by fear and anger and whatever — heat of blood, or whatever expression you may wish to substitute for that. But I think that that explains it as well as I can explain it."

datory. We have tolerated the use of the presumption of malice language only in cases where it is clear that, in the context in which it is used, the presumption is not mandatory. See, e.g., *Commonwealth* v. *Fitzgerald*, 380 Mass. 840 (1980); *Gibson* v. *Commonwealth*, 377 Mass. 539 (1979); *Commonwealth* v. *McInerney*, 373 Mass. 136 (1977). We have upheld presumption of malice instructions where language in the rest of the charge effectively negates any burden-shifting, see, e.g., *Commonwealth* v. *Repoza*, 382 Mass. 119 (1980); *Commonwealth* v. *Hughes*, 380 Mass. 596 (1980); *Commonwealth* v. *McInerney, supra,* and we have upheld instructions employing presumption of malice language in cases in which the issue of malice was not disputed, see *Commonwealth* v. *Lee*, 383 Mass. 507 (1981). This case does not fit any of these categories.

Here the jurors focused on the only issue in dispute: the presence or absence of malice. Therefore, the use of the presumption of malice, coupled with expressions such as "unless rebutted," or "accounted for," or "disproved," also used in connection with the malice instruction, "strongly implied, if . . . not directly impose[d], a burden of proof [i.e., persuasion] on the defendant." *Connolly* v. *Commonwealth*, 377 Mass. 527, 533 (1979). See *Commonwealth* v. *Collins*, 374 Mass. 596 (1978).

The only inference a reasonable juror could have drawn from the instructions as a whole, was that, if the jury found the defendant had used a dangerous weapon, it was the defendant's obligation to disprove the presumption of malice. To the extent that the judge told the jurors that the Commonwealth had the burden of proof on every element of the crime in one part of the instructions, and in another part of the instructions implied that malice had to be disproved or rebutted, the instructions do not clearly place on the Commonwealth the duty to prove the presence of malice beyond a reasonable doubt. The fact that some of the instructions were correct is not determinative in this case, since "we cannot know whether the jury were guided by the correct or the incorrect portion of the instructions." *United States* v.

*Green,* 405 F.2d 1368, 1370 (D.C. Cir. 1968), aff'd, 424 F.2d 912 (D.C. Cir. 1970), cert. denied, 400 U.S. 997 (1971). "Because [the Richards] jury may have interpreted the judge's instruction[s] as constituting either a burden-shifting presumption . . . or a conclusive presumption . . ., and because either interpretation would have deprived the defendant of his right to the due process of law . . . the instruction[s] given in this case [were] unconstitutional." *Sandstrom* v. *Montana, supra* at 524.

Although the malice portion of the instructions is sufficient to warrant reversal, we also discuss certain portions of the instructions on self-defense, as they also have a bearing on our decision to exercise our power under § 33E. In the course of discussing self-defense, the judge told the jury that self-defense "implies the use of necessary force for the purpose of protecting one's person. And the use of excessive force to injure or kill one's assailant is, of course, prohibited, and it destroys the defense of self defense." These instructions "left it to the jury to accept wholly or to reject wholly self-defence as an excuse for the killing." *Commonwealth* v. *Kendrick,* 351 Mass. 203, 211 (1966). "The jury, however, should have been instructed further, upon the assumption that the deceased was the original assailant, that if the use of the [gun] by the defendant as a means of averting harm to himself was unreasonable and clearly excessive in light of the existing circumstances, they could conclude that the defendant himself became the attacker and, since death resulted from his use of excessive force, he would be guilty of manslaughter." *Id.* Thus, the charge is deficient in this respect.

Additionally, other language in the charge concerning self-defense included finding language similar to that which we held required reversal in *Commonwealth* v. *Rodriguez,* 370 Mass. 684, 691 (1976). For example, the judge charged that "some of the evidence, relates to the defense of self defense. Of course, this depends entirely . . . on what you find the facts to be." He later instructed the jury that they were called upon to determine "was [the defendant] acting

in self defense," and, another time, "whether or not he acted in self defense." The jurors were also instructed "[Y]ou may find the defendant not guilty, if you find that he didn't commit the offense here, or if you find that he acted in self defense."

An instruction allowing the jury to find or not to find that the defendant acted in self-defense combines two errors. First, it implies that there is a burden of proof on that issue on the defendant. Second, the "finding" language "does not describe precisely what degree of persuasion is required." *Connolly* v. *Commonwealth*, 377 Mass. 527, 533-534 (1979). Such language suggests that the jury must find, by a preponderance of the evidence, at least, that the defendant's reliance on self-defense was proper. However, "[i]t is enough for acquittal that there be a reasonable doubt whether the defendant acted in proper self-defense." *Id*. at 534. See *Notaro* v. *United States*, 363 F.2d 169, 176 (9th Cir. 1966).

All in all, "these instructions must have left the jury badly confused. . . . [T]he error[s] in the charge . . . threatened so dramatically to reduce the Commonwealth's required 'quantum of proof' [*Connolly, supra* at 538], as to create a substantial risk of a miscarriage of justice." *Commonwealth* v. *Wood*, 380 Mass. 545, 548-549 (1980). Further, these instructions, read as a whole, preclude serious consideration by the jury of the propriety of returning a verdict of manslaughter. Of course, "a clear miscarriage of justice has occurred if [the defendant] was guilty of manslaughter but is now serving the penalty for murder," *United States* v. *Frady*, 636 F.2d 506, 512 (D.C. Cir. 1980), cert. granted, 453 U.S. 911 (1981).[8] We therefore reverse and order a new trial.

---

[8] In the instructions, reasonable doubt was defined in terms of personal decision-making examples. While "we have never held . . . that the use of specific examples necessarily imports error, constitutional or otherwise," *Commonwealth* v. *Smith*, 381 Mass. 141, 145 (1980); see *Commonwealth* v. *Maddocks*, 207 Mass. 152, 156 (1910), the extensive reliance by the judge on personal decision-making examples to define reasonable doubt further weakens the instructions as a whole.

*Other issues.* At the close of the Commonwealth's case, the defendant moved for directed verdicts of acquittal on so much of the indictment as alleged murder in the first degree and in the second degree. The motions were denied, and the defendant now claims that the denial of his motions as to the charge of murder in the second degree was error depriving him of due process of law. Viewing the evidence introduced up to the time the Commonwealth rested its case, *Commonwealth* v. *Borans,* 379 Mass. 117, 134 (1979), and applying the well-established test of "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," *Commonwealth* v. *Latimore,* 378 Mass. 671, 677 (1979), quoting from *Jackson* v. *Virginia,* 443 U.S. 307, 319 (1979), we conclude that there was sufficient evidence to warrant submitting the case to the jury on the question whether the defendant acted with malice aforethought. The jurors could find that the defendant got out of his automobile, approached the men in the parking lot armed with a gun, and shot one of them with intent to inflict serious injury. That evidence is sufficient to support a finding of malice aforethought. Since "there was . . . evidence from which the jury could infer malice, it was not error for the judge to refuse to limit the jury verdicts to either one of not guilty or one of guilty of manslaughter." *Commonwealth* v. *McInerney,* 373 Mass. 136, 140 (1977). See *Commonwealth* v. *Huot,* 380 Mass. 403 (1980); *Commonwealth* v. *McGuirk,* 376 Mass. 338, 345 (1978), cert. denied, 439 U.S. 1120 (1979); *Commonwealth* v. *Campbell,* 375 Mass. 308, 311-312 (1978).

Other issues raised by the defendant are unlikely to recur in the same context at his new trial, and therefore we need not reach them. *Commonwealth* v. *Haas,* 373 Mass. 545, 564 (1977).

The judgment is reversed, the verdict is set aside, and the case is remanded to the Superior Court for a new trial.

*So ordered.*

NOLAN, J. (dissenting, with whom Braucher and Lynch, JJ., join). There should be a reversal only on a showing of grave prejudice or substantial likelihood that a miscarriage of justice has occurred. *Commonwealth* v. *Grace,* 381 Mass. 753, 758-759 (1980). The court has reversed a conviction in this case because the trial judge used language in his charge on malice condemned by the United States Supreme Court nine years after this trial. In *Sandstrom* v. *Montana,* 442 U.S. 510, 524 (1979), the Court registered its disapproval of jury instructions which tend to create a presumption of malice and thereby to shift to the defendant the burden of proof on such a substantive element. However, "whether a defendant has been accorded his constitutional rights depends upon the way in which a reasonable juror could have interpreted the instruction." *Sandstrom, supra* at 514. There is no reversible error, however, if the charge read as a whole, makes clear that the Commonwealth must shoulder the burden of proof on every element of the crime. *Commonwealth* v. *Medina,* 380 Mass. 565, 578 (1980). On four occasions, at least, in his instructions, the judge emphasized the Commonwealth's burden of proof on every substantive issue. No more should be expected of a judge. See *Commonwealth* v. *Medina, supra* at 577 n.5. The judge said that: "unless malice is shown by circumstances attending the killing, it is manslaughter. . . . [M]alice is an indispensable ingredient of the crime of murder." Nowhere did he even suggest that the defendant bore the burden of disproving malice. See *Commonwealth* v. *Fitzgerald,* 380 Mass. 840, 844-845 (1980); *Commonwealth* v. *McInerney,* 373 Mass. 136, 148-149 (1977).

The other basis for the reversal was the instruction on self-defense which the court sees as violating the tenets of *Commonwealth* v. *Rodriguez,* 370 Mass. 684 (1976), decided six years after this trial. However, there has been no violation of *Rodriguez.* The judge referred to the unlawfulness of the killing as one substantive element, proof of which must be borne by the Commonwealth. See and compare *Commonwealth* v. *Cobb,* 379 Mass. 456, 467 (1980).

In his supplemental instructions, he told the jury that absence of legal justification for the killing must be proved by the government.

In fine, I fail to perceive that the "over-all impact" of the charge in its entirety permitted the jury to think for one minute that the defendant had any burden to prove any element of the crimes with which he was charged. See *Commonwealth* v. *Sellon*, 380 Mass. 220, 232 (1980). Accordingly, I would affirm the judgment of conviction.