COMMONWEALTH *vs.* LEE A. GIGUERE.

Essex. March 6, 1995. - May 3, 1995.

Present: WILKINS, ABRAMS, NOLAN, & GREANEY, JJ.

*Homicide. Practice, Criminal,* Instructions to jury, Presumptions and bur-
den of proof, Capital case, Comment by prosecutor. *Due Process of
Law,* Burden of proof. *Malice. Intoxication. Evidence,* Tape recording.

The judge's instructions to the jury at a murder trial properly allocated the
burden of proof to the Commonwealth and did not shift the burden of
proof to the defendant on the issue of malice. [229-231]
At a murder trial the judge's single inadvertent misstatement in his sup-
plemental instructions to the jury did not constitute reversible error
where the judge promptly gave curative instructions that emphasized
the error and clearly set out the proper burden of proof on the elements
of the crime. [231-232]
At a murder trial, no substantial likelihood of a miscarriage of justice was
created by the judge's instructions, which were adequate, on the effects
of the defendant's voluntary intoxication. [232-233]
No reason appeared, upon consideration of all facts of a murder trial and
alleged trial errors, for reduction of the verdict to a lesser degree pursu-
ant to G. L. c. 278, § 33E. [233-235]
A tape recording of a telephone call to police made by the victim's wife
immediately after her husband was shot was properly admitted at a
murder trial as an excited utterance. [233-234]
An inappropriate remark in closing argument by the prosecutor at a mur-
der trial regarding extraevidentiary matters was not, in light of the
judge's instructions, so prejudicial as to warrant reversal or reduction of
the verdict. [234-235]

INDICTMENT found and returned in the Superior Court De-
partment on May 1, 1991.

The case was tried before *John C. Cratsley,* J.

*Willie J. Davis* for the defendant.

*Elin H. Graydon,* Assistant District Attorney, for the
Commonwealth.

ABRAMS, J. Convicted of murder in the first degree, Lee A. Giguere appeals.[1] On appeal, he argues that: (1) the judge, in his instructions to the jury, improperly shifted the burden of proof to the defendant; (2) the judge improperly failed to give an adequate instruction on the effect of intoxication on premeditation; and (3) based on the facts of the case and trial errors we should enter a lesser degree of guilt. See G. L. c. 278, § 33E (1992 ed.). We affirm the judgment. We conclude that we should not exercise our power under G. L. c. 278, § 33E, to order a new trial or to enter a lesser degree of guilt on the conviction of murder in the first degree.

1. *Facts.* We set forth the facts in the light most favorable to the Commonwealth. See *Commonwealth* v. *Burnett*, 417 Mass. 740, 741 (1994); *Commonwealth* v. *Salemme*, 395 Mass. 594, 595 (1985). The defendant suspected that the victim, Robert Luz, was having an affair with Diane Young, a woman in whom the defendant was romantically interested and with whom he was sexually involved. In confronting the victim about this alleged affair, the defendant shot the victim in the chest, killing him. Young and Luz's wife, Linda, were present at the killing.

The victim and his wife knew the defendant and Young for many years. The victim and his wife were not particularly close with either of them. Young never had a romantic or sexual relationship with the victim.[2] Nonetheless, the defendant believed that they were sexually involved.

Young and the defendant met during the summer of 1989. The defendant did some work for Young and eventually moved into a storage warehouse which she owned.[3] Young and the defendant became close friends and had sexual inter-

---

[1]He also was convicted of carrying a firearm without a license, G. L. c. 269, § 10 (*a*) (1992 ed.), and assault by means of a dangerous weapon, G. L. c. 265, § 15B (1992 ed.). The defendant challenges only his murder conviction.

[2]On one occasion, over two years prior to the murder, the victim kissed Young.

[3]Young did not live at the warehouse.

course on several occasions. The defendant wanted to pursue a "romantic relationship" with Young, but she was not interested.

On March 4, 1991, six days prior to the murder, the victim telephoned Young about renting storage space for one of his daughters. Young went to the victim's apartment to discuss the matter. At that time, the defendant was at the warehouse working on his automobile. After meeting with the victim and his wife, Young ran some errands and attended a dance class. The victim tried to call Young at the warehouse after she left, but the defendant answered and said that she was not there.

When Young returned to the warehouse and saw the defendant, he was angry and upset. He claimed that he had damaged his automobile by accidentally putting degreaser in it instead of oil. He blamed Young and the victim for the error. The defendant asserted that he had asked her to get some oil, but she went to the victim's apartment instead. He told Young that she had not run errands, but, instead, had gone to the victim's apartment to "get laid."

The defendant remained angry throughout the week. He repeated his accusations that Young and the victim were to blame for his automobile's damage and that they were having an affair. When Young denied this, the defendant said she was a liar. The defendant repeatedly expressed anger toward the victim. On one occasion, the defendant said that he wanted to get even by making the victim pay for repairing his car or by giving the victim a good beating. On another occasion, the defendant said that he might break the victim's legs or shoot and kill him.

From Thursday evening through the morning of the murder, Young and the defendant were together. The defendant continued to express his anger toward the victim. At one point, the defendant produced a gun and played with it for about twenty minutes. He told Young that the bullets were hollow points. He said that he was going to take the gun with him and that he wanted to settle a score with the victim.

Throughout the day and a half prior to the murder, the defendant ingested alcohol, marihuana, Valium, and a substance which he called "speed," but which was, in fact, non-narcotic. Despite ingesting these substances, the defendant appeared sober. He walked, talked, and drove normally.

At about one o'clock on Saturday morning, the defendant and Young went to the house of a friend of the defendant. The defendant took the gun with him after checking that it fit into his pocket comfortably and could be removed easily. At about 6:30 A.M., they drove to a restaurant. The defendant told Young that he was angry at the victim and that, if he killed the victim, he also would have to kill the victim's wife. After eating, the defendant and Young left the restaurant and headed for the warehouse. The defendant, however, passed the turn to the warehouse and told Young that they were going to the victim's apartment "to settle this right now."

When the defendant and Young arrived, the victim let them into his apartment. The defendant accused the victim of "trying to put the make on" Young. Luz's wife told the defendant that she had been home during the visit and subsequent telephone call on Monday. The defendant was not satisfied. He was angry, aggressive, and confrontational. He pointed the gun at the victim. The victim told the defendant to put the gun down. As the victim raised his foot to take a step toward a doorway, the defendant shot him. The victim collapsed and later died.

The defendant told Luz's wife that he did not know that the safety was off or that there was a bullet in the chamber. Luz's wife tried to call for help, but the defendant refused to let her, saying he feared she would call the police. He pointed the gun at her and told her that he had to finish the job. When Luz's wife promised that she would not identify him, the defendant left, but first warned that, if anything happened, he would get a contract on her.

2. *Burden shifting.* In the course of instructing the jury on malice aforethought, the judge stated that "[a]ny intentional killing of a human being without legal justification or excuse,

with no extenuating circumstances sufficient in law to reduce the crime to manslaughter, is malicious within the meaning of 'malice aforethought.' " The defendant objected to the "reduce murder to manslaughter" language and moved for a mistrial. The judge did not grant a mistrial or give a curative instruction. Later, while recharging the jury, the judge repeated the language at issue. The defendant argues that this language shifted the burden of proof to him to prove extenuating circumstances in order to reduce the crime from murder to manslaughter and that a new trial should therefore be granted.

"[I]t is constitutionally impermissible to shift to a defendant the burden of disproving an element of a crime charged." *Commonwealth* v. *Moreira*, 385 Mass. 792, 794 (1982), and cases cited. "We view the instructions, in their entirety, to determine the 'probable impact, appraised realistically . . . upon the jury's factfinding function.' " *Commonwealth* v. *Richards*, 384 Mass. 396, 399-400 (1981), quoting *United States* v. *Wharton*, 433 F.2d 451, 457 (D.C. Cir. 1970). We uphold jury instructions that clearly place the burden of proof on the Commonwealth and which, while not referring to the burden of proof, adequately define mitigating factors and establish them as negating a determination of malice. See *Commonwealth* v. *Nieves*, 394 Mass. 355, 360 (1985); *Commonwealth* v. *Stokes*, 374 Mass. 583, 591 (1978). Viewed as a whole, the instructions do not shift the burden of proof.

There is no prohibition against the phrase "reduce murder to manslaughter." *Commonwealth* v. *Richards*, *supra* at 402. See *Commonwealth* v. *Webster* 5 Cush. 295, 305 (1850). Such language is acceptable where, as here, the instructions make it clear there is no mandatory presumption of malice and the rest of the instructions effectively negate any burden shifting by squarely placing the burden on the Commonwealth. *Commonwealth* v. *Richards*, *supra* at 403, and cases cited. The judge repeatedly stressed the Commonwealth's burden of proving all elements, including malice, and repeated throughout the instructions that the defendant bore

no burden whatsoever. Cf. *Commonwealth* v. *Mejia*, 407 Mass. 493, 495 (1990). The instructions properly allocated the burden of proof. See *Commonwealth* v. *Koonce*, 418 Mass. 367, 374 (1994).

The defendant also asserts that a slip of the tongue in the judge's supplemental instructions requires reversal. The judge told the jurors that the defendant had the burden of proving the elements of murder in the first degree.[4] The prosecutor and defense counsel brought this misstatement to the judge's attention. The judge promptly gave curative instructions.[5] The judge emphasized the error and the proper bur-

---

[4] The judge stated: "Therefore, if after considering all of the evidence in the case you find the Commonwealth has proven beyond a reasonable doubt each of the three elements of first degree murder that I have just defined; that is unlawful killing committed with deliberate premeditation and the killing was committed with malice aforethought, then you shall find the defendant guilty of murder in the first degree, committed with deliberately premeditated malice aforethought.

"If, however, after your consideration of all of the evidence you find that the *defendant* has not proven any one of these three elements beyond a reasonable doubt you must find the defendant guilty of murder in the first degree on the theory of deliberately premeditated malice aforethought" (emphasis added).

[5] The judge said: "Foreperson and members of the jury and alternates, the Counsels have pointed out to me that at one point in reviewing the elements and they commented that it may well have been in reviewing the elements of first degree murder, before I turned to second degree murder, I may have inadvertently said at one point that the defendant has the burden, at one particular spot in my commentary, if I said that, that was completely in error. As I have repeatedly instructed you, the Commonwealth bears the burden of proof on all of the elements of murder in the first degree and the elements of murder in the second degree and must establish those by a proof beyond a reasonable doubt. If I misstated it at any point and suggested that the defendant has any burden, let me repeat again, he has no burden whatsoever. The burden of proof rests entirely upon the Commonwealth and they must establish murder in the first degree, the three elements I defined for you, by proof beyond a reasonable doubt. And they must establish, if you entertain a reasonable doubt on any of those three, they must establish the two elements I defined for you for murder in the second degree. Any misstatement or suggestion that there is any burden on the defendant is entirely improper. As I told you, he enjoys a presumption of innocence and he is presumed innocent which is overcome only when the Commonwealth has persuaded you by a proof beyond a reasonable doubt of the three elements of first degree murder or two

den of proof and adequately ensured that the jury was aware that the defendant bore no burden whatsoever. In this context, the judge's error "would not cause a reasonable jury to shift the burden . . . to the defendant." *Commonwealth* v. *Koonce, supra* at 374. "Viewed as a whole, the charge to the jury indicated that it was the jury's duty to [determine if] the Commonwealth has met its burden of proving every element of the crime beyond a reasonable doubt before they could convict." *Commonwealth* v. *Sellon*, 380 Mass. 220, 234 (1980).

3. *Effect of intoxication on premeditation.* The defendant claims that the judge did not adequately instruct the jury on the effect of intoxication on premeditation. Because no objection was made, we review the matter only to determine whether there is a substantial likelihood of a miscarriage of justice. G. L. c. 278, § 33E. See *Commonwealth* v. *Sires*, 413 Mass. 292, 297 (1992).

"All that we have ever required be said to juries about the effect of drug consumption on a defendant's [state of mind is] satisfied by a simple instruction that the jury may consider credible evidence of the effects of the defendant's consumption of drugs in deciding whether the Commonwealth has met its burden of proving the defendant's state of mind beyond a reasonable doubt." *Commonwealth* v. *Sires, supra* at 300. The "adequacy of instructions must be determined in light of their over-all impact on the jury." *Commonwealth* v. *Sellon, supra* at 231-232. The judge's instructions that voluntary intoxication could be considered in determining whether there was premeditation were adequate.[6] See *id.*;

---

elements of second degree murder. If you entertain any reasonable doubt on those elements, the three elements, of first degree murder, you must consider whether they have proven beyond a reasonable doubt the three elements, the two elements of second degree, and if you entertain reasonable doubts there, move on to consider the elements of manslaughter which I have previously given to you.

"I believe I have clarified any misstatement that I may have made. And again, the burden of proof is on the Commonwealth of Massachusetts."

[6]In his instructions, the judge told the jury: "You may consider the defendant's mental condition at the time in question, including voluntary

*Commonwealth* v. *Lanoue*, 392 Mass. 583, 592 & n.6 (1984), *S.C.*, 400 Mass. 1007 (1989), and 409 Mass. 1 (1990), quoting *Commonwealth* v. *Delle Chiaie*, 323 Mass. 615, 617-618 (1949).

4. *Reduction of verdict.* The defendant argues that we should reduce the verdict pursuant to our power under G. L. c. 278, § 33E, because consideration of all the facts of the case and the trial errors leads to the conclusion that a lesser verdict would be more consonant with justice. In support of this, he asserts two specific trial errors to which he lodged objections.

First, the defendant argues that the judge erroneously admitted evidence of a tape recording of a telephone call from Luz's wife to the police immediately after the shooting. Despite the possible prejudice,[7] the judge was within his discretion in admitting the tape in evidence as an excited utterance. See *Commonwealth* v. *Sawyer*, 389 Mass. 686, 700 (1983) ("Whether evidence is relevant to prove an issue raised by the pleadings or an incidental material issue and whether the inflammatory nature of the evidence outweighs its probative value are matters for the discretion of the trial judge. This court will accept a trial judge's conclusion except

---

consumption of alcohol and/or drugs, if any, in determining whether or not the Commonwealth has proven beyond a reasonable doubt that the defendant acted with deliberate premeditation. Remembering that the Commonwealth has the burden of proof to establish premeditation by proof beyond a reasonable doubt, you may consider the role of intoxicating substances on the defendant, and whether they affected his ability to deliberately premeditate as I have described deliberate premeditation for you."

In further instructions, the judge said: "You may, jurors, consider the defendant's mental condition at the time in question, including the voluntary consumption of alcohol and/or drugs, if any, in determining whether or not the Commonwealth has proven beyond a reasonable doubt that the defendant acted with deliberate premeditation.

"Remembering that the Commonwealth has the burden of proof to establish deliberate premeditation by proof beyond a reasonable doubt, you may consider the role of intoxicating substances on the defendant and whether they affected his ability to deliberately premeditate . . . ."

[7]We note that, to reduce emotional impact on the jury, the tape was introduced through the police dispatcher who received the call, rather than through Luz's wife.

in the case of palpable error"). See also *Commonwealth* v. *Chasson*, 383 Mass. 183, 185 (1981) (within judge's discretion to allow victim's mother to testify, even though testimony was not essential to Commonwealth's case); *Commonwealth* v. *Smith*, 35 Mass. App. Ct. 655, 664 (1993) (allowing playing of tape of accident report as excited utterance). The tape was an out-of-court identification of the defendant and was also relevant to explain the basis on which the police stopped the defendant's automobile. It was not cumulative; Luz's wife could not remember most of the conversation.

Second, the defendant contends that we should consider the prosecutor's concededly inappropriate statement in his closing argument that: "Tuesday, I think it was, maybe Tuesday night, [I] find myself reading a fifth-grade science book preparing a quiz for my son: Involuntary muscle is a smooth muscle; an example of an involuntary muscle is the stomach. Skeletal muscles — ." The defendant argues that this statement was improper because it recounted personal experiences, unsupported by the record, and elicited sympathy from the jurors.[8] The statement was extraevidentiary and therefore improper.

Nonetheless, the statement does not warrant reversal or reduction of the verdict. Extraevidentiary remarks in closing arguments are normally adequately neutralized by a timely curative instruction and a general reminder that arguments of counsel are not evidence. *Commonwealth* v. *Nordstrom*, 364 Mass. 310, 313-314 (1973), and cases cited. See *Commonwealth* v. *Kozec*, 399 Mass. 514, 517 (1987) (instructions may mitigate any prejudice in final argument); *Commonwealth* v. *Shelley*, 374 Mass. 466, 470 (1978)

---

[8]The defendant argues that the "prosecutor's reference to his son and helping his son with his homework was clearly an attempt to elicit sympathy on the part of the jurors. This reference allowed the jurors to harken back to Linda Luz's testimony about her daughter, and how Linda and Bob Luz had been negotiating with Diane Young for storage space for their daughter. The jurors could not fail to realize that it was these negotiations which ultimately led to the death of Bob Luz."

(prosecutorial misconduct can be harmless error where confined to collateral issues and accompanied by curative instruction), *S.C.*, 381 Mass. 340 (1980), and 411 Mass. 692 (1992). The judge sustained the defendant's objection and said, "I think that this is not appropriately before the jury." Later, in his charge, the judge reminded the jury of instructions he had given them earlier that the closing arguments were not evidence and that the jurors' memory of the evidence is what governs their verdict. In light of the judge's instructions, the remarks were not so prejudicial as to warrant reducing the verdict. See *Commonwealth v. Kozec, supra* at 522 ("The prosecutor's misstep was not . . . outrageous and, standing alone, [did] not warrant reversal of the judgment of conviction").

The defendant asks that we consider the evidence that he ingested alcohol and drugs prior to the murder. The issue of impairment due to alcohol or drugs, however, was properly for the jury.[9] We have considered the entire case on the law and the evidence, see G. L. c. 278, § 33E, and conclude that the interests of justice do not require a new trial or entry of a verdict of a lesser degree of guilt.

*Judgment affirmed.*

---

[9]To the extent the defendant asks that we consider his unrequited love for Young as a mitigating factor, we decline to do so.